Chief Justice Robertson
delivered the Opinion of the Court.
The County Court of Jefferson having granted to Kalfus and Waits, a ferry, from a lot of ground in the town of Portland, on the Ohio river, to a point- on the Indiana shore, in the town of Ne.w-Albany — Carter and Arnold, claiming the benefit of a ferry previously established, and in successful and regular operation, near the same. point in Portland, to the opposite shore, ánd who therefore opposed the grant to Kalfus and Watts, have brought the case to this Court by appeal.
A ferry is a fran.chise incident to the land; the establishment of a ferry across the Ohio, is expensive, &. the grant is founded on a valuable consideration; andtho’ it does not imply that there shall beno other’ similar grant in any event,it does imply that no subsequent grant impairing its value can be made, unless the pub-lie interest requires it. And—
*44 The first question presented for consideration, is whether the appellants have any legal right to ask a reversal of the order granting ferry privileges to the appelleesAnd this question is vexed and difficult; and, so far as we know, has never, been judicially determined. The proper answer to it, depends on two propositions: first. Is any private right of the appellants injuriously affected by the order of the County Court? and, secondly — is the discretion of County Courts, in establishing ferries, where they have any discretion — absolute and uncontrollable?
The third section of an act of assembly of 1806 (1 Stat. Law, 710,) expressly conferred on the County Courts of counties bordering on the Ohio river, power 4‘ to establish ferries’ across the said river, to the oppo- “ site shore, where the same may, by them, be deemed 44 necessary,” with a proviso restricting the power to one mile, afterwards extended to a mile and a half, above or below a previously established ferry, unless there should be a towm or impassable stream within the prescribed distance, or unless there should be an established ferry on the opposite side of the river.
Had there been no town including the point at which the County Court established the new ferry, there could be no doubt that, according to the facts exhibited in this case, the appellants would have had a right to demand a reversal of the unauthorized order; because the limitation to the extent of a mile and a half, which would have been violated, was prescribed for the benefit of ferries established on the Ohio river.
But it is argued that, as this case is within one of the exceptions from the prescribed limitation, the discretion of the County Court was unlimited, and cannot be controlled by this Court, and. that, therefore, the appellants have no more right than other persons to complain. We are inclined, however, to a different conclusion.
A ferry on the Ohio river is a franchise incident to land, and which may pass with it. A right to ferriage liL' that to pontage, is valuable property, and requires, on the Ohio river, large expenditures of money by the grantee of the franchise; and though the grant of such a *45 franchise does not imply that no other similar franchise shall be afterwards, in any event, granted to any other person, so as to impair the value of the first; yet the first grant, being valuable, and founded on a valuable consideration, should, as we think, be understood as implying that there should be no subsequent grant to another person, impairing its value, unless the public interest should be deemed to require such another and rival franchise.
Tho’ the statutes vesting the County Courts with power to establish ferries across the Ohio, give them an extensive discretion; those courts are hbt intended to be the only organ of the State, or ’ the final arbiters under all circumstances. The discretion allowed to them. — even when exercised in relation to ferries in towns, or other places with in the above proviso, is of a quasi judicial character, and subject to the revision and control of an appellate tribunal.
Tho’ the owner of the land at any particular point on the Ohio river, is the only person’ entitled to the grant of a ferry there, he has no right to demand such grant, unless the public convenience requires it. And, though the grantee of a ferry in a town on the Ohio, cannot claim an exclusive right inconsistent with the public inierest, he may object to the establishment of one where the' public interest will not be promoted by it: and in either case, the decision of the county court is subject to the revision and control of the Court of Appeals. But—
*45 And this idea is fortified by the fact that the statute of 1806 withholds, with certain exceptions, all power from the County Courts to establish a rival ferry within a prescribed distance of one previously established; for jt is evident that this limitation was imposed only because it was deemed but just to the first grantee, and it is therefore reasonable to infer, that the enumerated exceptions were made only because, in the cases excepted, the public interest might, prima facie, require more than one ferry within a distance of a mile and a half.
If then the public convenience does not require more than one ferry at Portland, it seems to us that the appellants have been injured.
Second. If thus injured, the appellants have, in our opinion, a right to appeal to this Court, and ask a reversal of the act of the County Court, unless the Legislature intended that the County Courts should exercise a personal, capricious and unlimited discretion, in determining whether the public interest requires more than one ferry in a town on the Ohio river.
And we are unwilling to concede any such anomaly. It is, we think, more reasonable - to presume that the discretion conceded to the County. Courts was intended to be quasi judicial, and that, though extensive discretion is properly conceded to the County Courts, they were not intended to be the only organ of the State, and the sole and final arbiter under all circumstances; and this deduction is, in no slight degree, fortified by the fact that, though the?general statute of 1796, regulating the estabr lishment of ferries within this State, authorized the Gounty Courts to establish ferries ‘‘ whenever they (should) deem it necessarynevertheless, a subsequent general en *46 actment of 1798, authorized an unsuccessful applicant for a ferry from a point included within his own land, to appeal to this Court, and assign errors in fact as well as errors in law. Such an enactment would have been nugatory if the discretion of the County Court had been deemed final and uncontrollable. And moreover, giving the right to appeal, and to assign errors in fact, presupposes, as we 'are inclined to think, a recognition of a pre-existent right to prosecute a writ of error, and assign errors in law.
The discretion of the county courts being, by the statutes, extensive, will be controlled by the court of appeals, only in cases of palpable abuse.
The act of 1798, being general and prospective, applied to the cases subsequently embraced by the act of 1806; and if it did not, an owner of land on the Ohio river, who had made an unsuccessful application for a ferry, could not appeal; but his right to do so, has been often recognized by this Court, and especially in the case of Kennedy vs. The Trustees of Covington, 4 J. J. Mar. 538.
In the case just cited, the Court (the Chief Justice dissenting,) having decided that no other person than an unsuccessful applicant could appeal and assign errors in fact, the Legislature declared, by an act of February, 1837, that any person aggrieved by the establishment of a ferry, might appeal to this Court, and assign errors in fact as well as errors in law. And now, therefore, there can be no doubt that all persons interested have an equal right to appeal.
4-nd if an unsuccessful applicant for a ferry may appeal merely because he owns the land, and may therefore be aggrieved by the rejection of his application, may not the owner of a ferry in a town on the Ohio river, granted to him only because he was the owner of the land, be aggrieved by the injudicious and reckless establishment, in the same town, of another ferry, which may destroy or greatly diminish the value of his franchise? and may he not, therefore, also appeal to this Court? It seems so to us. }
The true statutory doctrine respecting ferries on the Ohio, seems to us to be this: that, though an owner of land on that river, is alone entitled to be the grantee of a ferry across it, yet he has no legal right to demand such a grant, unless the public convenience shall require *47 the establishment of a ferry from his land; and that, though a grantee of a ferry in a town on the Ohio river, cannot claim an exclusive right inconsistent with the public interest,-yet he may object to the establishment of another ferry in the same town, whenever the public interest will not be promoted by another;' and that in each case, the discretion of the County Court, though it is and should be great, is nevertheless subject to revision and control, for the conservation of both private rights and public interest.
The next and only remaining question, is, whether the discretion of the County Court has been abused to the prejudice of the appellants. We would control the discretion of a County Court in establishing or refusing to establish a ferry, only in a case of palpable abuse. And there has not been such an abuse in this case.
It appears that Kalfus and Watts own the ground on the river at the point where their ferry has been established; and though their lot is small, we cannot judicially determine that it is not large enough for a landing, and for all the purposes of their franchise. And, upon the facts proved in this Court, not only can we not decide that the public interest would'be prejudiced, but we are inclined strongly to the conclusion that it may be promoted, by the grant to Kalfus and Watts.
Wherefore, it is considered that, the order of the County Court granting ferry privileges to Kalfus & Watts, be, and the same is hereby affirmed.