## SIMONS vs. FRENCH.

The public is the owner in fee of the flats adjoining an arm of the sea, over which the tide ebbs and flows, up to high-water mark, such title being vested in the public for purposes of navigation and commerce.

The owner of upland adjoining such flats is entitled, by virtue of such ownership, to the exclusive right of wharfing out over such flats in front of his upland to the channel of the arm of the sea, subject to the rights of the public.

This right of wharfage is not, however, an inseparable incident of the title to the upland, so that a conveyance of the upland necessarily conveys the right of wharfage, or so that the right of wharfage may not be conveyed without the upland.

And the question whether such right is conveyed by a deed of such upland, depends on the intention of the parties, to be ascertained from the language of the deed.

Therefore, where a warranty deed of a piece of such upland, extending to such flats, described the land conveyed as lying within certain lines therein defined, which were to extend so far as to enclose twenty-five rods of land, and did not bound said land on any specified object, and contained also a release of a specified portion of the flats adjoining; it was held, that the rights of the grantor in the flats not falling within said lines and not specifically described in said deed, did not pass thereby.

As to the rule by which the rights of wharfage are to be determined among different owners of the upland, in the case of a cove, or indentation of the shore. Qu.

THIS was an action of ejectment, brought to recover possession of a piece of mud flats, adjacent to an arm of the sea and below high-water mark, on which the defendant had erected a shop and wharf.

The case was tried on the plea of the general issue closed to the jury, at the term of the superior court, holden in the county of Fairfield, in October 1856.

On the trial both parties claimed title to the demanded premises as incident to certain uplands belonging to them respectively. It appeared that the mud flats were a basin or cove setting into the land from the Pequonnock river, near its mouth at the city of Bridgeport, and bounded by a semi-circular sweep of upland. The plaintiff claimed that the rule of law determining the rights of the respective owners of the upland, to occupy the mud flats of the basin for purposes of wharfage, was, that the whole front of the upland should be first ascertained, measuring the front of each proprietor, not

by its indentations, but by a base line running from corner to corner, and that the whole right of wharfage should be divided among the owners of the upland according to their respective proportions of the whole front, such right of wharfage extending by lines determined by the application of this principle, into the cove and not necessarily towards the channel; and claimed that the application of this rule would bring the whole or a part of the demanded premises within her line.

The defendant claimed that the demanded premises lay directly between his upland and the channel of the river, and that he had a right to wharf out to the channel; and that the right of wharfage claimed by the plaintiff would not extend from her land towards the channel, but parallel with it, and that such right could legally extend only towards the channel.

The plaintiff claimed under the will of Samuel Simons and the distribution of his estate, and claimed no other right than that derived therefrom. The defendant claimed that the plaintiff had no title to the disputed premises, by reason of a conveyance made by the said Samuel Simons, in his lifetime, to Zerah Weed and others, of a small piece of the upland extending to said flats, which conveyance the defendant claimed carried with it, as incident to the land described in the deed, all the right of the said Samuel in the flats between the land described and the channel of the river, and which he claimed included the demanded premises. The plaintiff claimed that even if this effect should be given to the deed in question, a portion of the demanded premises would remain unaffected thereby, and her title to such portion would be good, if the court should sustain her claim before stated with regard to the apportionment of the rights of wharfage among the proprietors of the upland.

The deed to Weed and others was a warranty, and described the premises conveyed as follows : " a certain tract of land situated in said Bridgeport, and bounded as follows : beginning seventy-five feet easterly of the east side of my saw-mill building on the edge of the wharf, and running from

that point in the direction of the wharf-log and wall directly westerly within six feet of the main track of the railroad; thence northerly the same distance from the railroad track, so far that a line run easterly so far as to be opposite at a right angle, and three and a half rods from the place of beginning, on the edge of the wharf, will enclose twenty-five rods of land. To the land and flats on which the saw-mill stands, I quit all right and title, and also all right to the water power passing through the culverts of the railroad, and of all the flats and land I own embracing said culverts, and all the land between the saw-mill and railroad."

The parties requested the court to charge the jury according to their respective claims.

The court instructed the jury that the deed of Samuel Simons to Weed and others, conveyed to the grantees not only the land described in the deed, but all the rights of the said Samuel in the mud flats which he held at the time as incident to the land described in the deed, and that the plaintiff had in consequence no title to that part of the disputed premises which the said Samuel had so owned as incident to said twenty-five rods.

The court further charged the jury that the right of each proprietor, exclusively, to wharf out, in front of his own land, in public waters, subject to all public right, was the clear law of this state, but that it did not follow from this that each proprietor around a cove or basin of public water had a right to wharf out the whole extent of the cove, or to any absolute extent, irrespective of equal rights and necessities of other proprietors on said water; and that the true rule was in this case, as in all other cases of common rights or private rights which if extended without limit would come in conflict, that each one must, under existing circumstances, have a fair, just and reasonable enjoyment of his right of wharfing in front of his own land; and if applying this rule in the present case, it should appear that the defendant's placing his shop and wharf where they are situate, was but a fair, just and reasonable enjoyment of his right to wharf in front of

his land, considering the same fair, just and reasonable right of the plaintiff in front of her land, the defendant would not be liable; but otherwise he would.

The jury having returned a verdict for the defendant, the plaintiff moved for a new trial, for a misdirection, and the case was reserved for the advice of this court.

*Hawley* and *Dutton,* in support of the motion.

I. The court put a wrong construction on the deed from Simons to Weed and others. The grant of the flats under the saw-mill shows the intention of the grantors not to convey the residue of the flats. *Expressio unius, exclusio alterius.* The upland can be conveyed without the flats. *Nichols* v. *Lewis,* 15 Conn., 137. *Storer* v. *Freeman,* 6 Mass., 435. *Jackson* v. *Hathaway,* 15 John., 447.

II. The rule laid down by the court regarding the ownership of the flats was erroneous.

1. Such a rule would be very inconvenient. It furnishes no definite mode of ascertaining the ownership of the flats.

2. No such rule has ever been adopted by any court.

3. The rule adopted by the superior court would make every proprietor's title to flats, a question of fact for the jury to decide, instead of being, as it should be, a question of law.

4. The charge of the court implies that the right of an adjoining proprietor to flats is liable to be changed by circumstances.

5. The rule for the division of flats is either that claimed by the plaintiff on the trial, (Angell on Water Courses, sec. 56,) or that the flats should be divided by lines drawn from the ends of the shore line of each proprietor to the channel, giving to each a line on the channel proportioned to the length of his line on the upland. *Rust* v. *Boston Mill Corporation,* 6 Pick., 158. *Ashby* v. *Eastern Railroad Co.,* 5 Met., 368.

*Loomis* and *Warner,* contra.

1. The charge of the court, that the deed from Samuel

Simons to Weed and others extinguished the right of the grantor to wharf out to the extent of the upland described in said deed, is correct. 1 Sw. Dig., 109. *Chapman* v. *Kimball*, 9 Conn., 41. *E. Haven* v. *Hemingway*, 7 Conn., 186.

2. The record proves that the plaintiff had no right to wharf out upon the *locus in quo;* said deed from Samuel Simons to Weed and others, conveying away all his interest in his upland fronting southerly on the flats lying west of a point seventy-five feet east of the saw-mill described in said deed. *Stiles* v. *Curtis*, 4 Day, 329. 3 Kent Com., 432, 3. *Cortelyou* v. *Van Brandt*, 2 Johns., 357. *Chatham* v. *Brainard*, 11 Conn. R., 60. *Chamberlain* v. *Pendleton*, 13 Conn. R., 23. *Reed* v. *Leeds*, 19 Conn. R., 182.

3. As to any other upland to which the *locus in quo* could be incident, the jury have found that none such belonged to the plaintiff.

4. There were no premises before the jury, for the application of the rule claimed by the plaintiff, and therefore there was no necessity or propriety for the judge to charge the jury according to said claim.

5. The principle laid down by the court is correct, that in every case the right of the parties must be restricted to what is just and reasonable.

STORRS, J. From the best consideration which we have been able to give to this case, we are of opinion that the court below erred in instructing the jury, that the effect of the deed from Simons to Weed and others was to deprive said Simons of any right which he then had, to wharf out over the premises demanded. This is clearly so, unless the right to wharf out is inseparable from the upland, so that one can not be conveyed without the other. If we suppose that the demanded premises, instead of flats, were not of such a character as to be governed by any peculiar considerations applicable to flats, there could be no doubt that the effect of the deed to Weed and others would be merely to convey to the grantees the land defined by the lines or limits of that deed. The descriptive part of that deed is as follows: " Beginning seventy-five feet easterly of the east side of my saw-mill

building on the edge of the wharf, and running from that point in the direction of the wharf log and wall, directly westerly to within six feet of the main track of the railroad; thence the same distance from the railroad track so far that a line run easterly so far as to be opposite at a right angle, and three and a half rods from the place of beginning, on the edge of the wharf, will enclose twenty-five rods of land."

It will thus be seen that the premises are not described as abutted or bounded, upon any objects or proprietors, but are simply described as lying within certain lines therein defined, and particularly designated. The deed has been likened to one in which land has been described as bounded on specified objects, such as a highway or wall, in which case, if nothing appears to show a different intention, the land would extend to the middle of such wall or highway. But there being no object upon which any portion of this land is abutted or bounded, there is no likeness in the present case to those which have been alluded to. This is like a deed of a piece of land precisely four rods square, on the north-west corner of a rectangular lot, which of course conveys only the land embraced within lines which would mark out such a quantity of land. And that it was the intention of the grantor in this case, merely to convey the land defined in the deed, and not to extend the rights of the grantees over the flats, between that land and the harbor, is evident from the fact that the grantor adds that he releases all his right and title to the land, and flats, on which the saw-mill stands, which saw-mill extends southerly somewhat beyond the piece of land described in said deed, and to the water power passing through the culverts to said mill, and to the flats and land embracing said culverts, and to the land between the saw-mill and railroad; none of the land to which he thus releases his right, being embraced by the premises demanded.

When, therefore, Simons thus particularly defined in his deed the property which he intended thereby to convey, it would be an unwarrantable stretch of construction to hold that he intended to convey anything beyond. The specific designation in the deed of the land conveyed, is tantamount

to an express exclusion of any other property. Or in other words, there is an absence of any conveyance of property, other than that explicitly described.

The question, then, is whether it is competent for the owner of a piece of upland, to which is attached the right of wharfing out in front of it, over flats adjacent thereto, on which the tide ebbs and flows, and lying between said upland and an arm of the sea, to convey the upland without said right, or the right without said upland. That this may be done we do not entertain a doubt.

In England, the king is the proprietor of the land covered by navigable waters, where the tide ebbs and flows, to high-water mark; which, however, he probably owns as a trustee for the public, for purposes of navigation and commerce, and as such, has the right to convey his proprietary interest, subject to such rights of the public.

In Connecticut, it is now settled that the public, representing the former title of the king, is the owner in fee of such flats up to high water-mark, but that the owner of the upland adjoining such flats becomes entitled, by virtue of his ownership of the upland, to the exclusive right of wharfing out over them, in front of said upland, to the channel of an arm of the sea adjoining such flats. This right of wharfage—which, if in England it were vested in an individual, would be a franchise, being a royal privilege, or branch of the king's prerogative, subsisting in the hands of a subject—is with us, in the owner of the upland, a franchise, by the definition of that term as applicable here, and constitutes, like other franchises, a species of property, which, like other property, is alienable by the owner. We do not consider that such right of wharfage, or franchise, is an inseparable incident or accessory to the upland, in such a sense that it inheres in, and is a part of, such upland itself, so as to be within the operation of the maxim, " *Accessorium non ducit sed sequitur suum principale,*" and so, therefore, that a grant of the upland necessarily conveys said franchise. It is true that such right of wharfage originates in, and is derived from, the ownership of the adjoining upland, and it was deemed by our courts to

be attached thereto, undoubtedly from motives of general policy and convenience, and perhaps because in the early settlement of the state the establishment of such a principle would be an inducement to persons owning upland, to erect on the adjoining flats, wharves, and other conveniences for the accommodation of commerce, when the colony was unable to build them at its own expense. But this right, being once acquired by this, or whatever means, becomes in our view as separable from the ownership of the adjoining upland, and consequently as alienable by itself, as any other property, right, or franchise. And we can not perceive that a conveyance or reservation of it, by the owner of the upland, is not as valid as the conveyance of a similar right by the king in England to one of his subjects; nor why the exclusive right to erect wharves upon a piece of flats before it has been used for that purpose, is not as alienable by the owner of such right, as it would be after a wharf had been erected upon it; and in the latter case, there is no doubt that the wharf might be conveyed by itself, like other property, or if unconveyed by the owner in his lifetime, would descend to his heirs like other real estate.

It is obviously of no consequence in itself, as it respects the public, whether the right of erecting and maintaining wharves upon such flats, be vested in the owner of the adjoining upland, or in any other person. The public in either case are equally secured, as it respects their right of navigation and commerce. Nor do we perceive any principle of public policy whatever, which requires that such right should be inseparably united with the ownership of the adjoining upland.

The principle which prevails in England, that has been mentioned, in respect to the exclusive ownership of the king in flats, and which is there vested in him as being promotive of the interests of navigation, shows that no public inconvenience can arise from vesting this franchise in a person who is not the owner of the adjoining land.

In Massachusetts also, it is settled that the upland and the flats may be conveyed separately. It is true, that there,

by virtue of an ancient colonial ordinance, or of an imme-morial usage, the owner of upland owns the fee of adjoining flats over which the tide ebbs and flows, to a distance not exceeding one hundred rods from the upland. And being so the owner in fee of said flats, there is no more legal objection to his disposing of any portion of them, than of any other land. But we adduce it to show that there is nothing in the nature or character of such flats, and no principle of public policy, which forbids their practical separation from the up-land to which they are adjacent, or consequently the inde-pendent exercise, by the owner of them, of any peculiar rights to which they may be made subservient.

And in point of fact, we know that nothing is more usual in this state, than the ownership of wharf property, discon-nected from that of the upland adjoining. Upon this point, therefore, we are of opinion that there was an error in the charge of the court below, and that the plaintiff is entitled to a new trial. See 3 Kent Com., 421, 5th ed. *Bowman's Lessees* v. *Wathan*, 2 McLean R., 376. *Charles River Bridge* v. *Warren Bridge,* 11 Pet., 638. *Cincinnati* v. *White,* 6 Pet., 431. *Barclay* v. *Howell,* 6 Pet., 498. *New Orleans* v. *U. States,* 10 Pet., 662. *Gould* v. *Hudson River R. R. Co.,* 2 Selden, 522. 6 Dana, 43.

A rule was laid down by the judge below to the jury, pre-scribing the mode of determining the limits within which the owners of upland have a right to wharf out in front thereof, on flats, over which the tide ebbs and flows, lying between such land and navigable arms of the sea. We refrain from determining what that rule in any case should be, because this case is so presented to us, on the motion, that it is im-possible to foresee that any particular rule which we might adopt, would be applicable to the facts as they may ulti-mately appear on a future trial. We prefer that another trial should disclose, more definitely than the last, the shape of the upland flats, and arm of the sea, and their relative position to each other.

We would only remark in conclusion, that although the general right of a proprietor of upland to wharf out in front

of such land, in public waters, was correctly stated in the charge below, the rule, which was then laid down for the purpose of regulating the exercise of such right, was not, in our opinion, stated with sufficient definiteness and precision, and left it too much to be determined, according to what might, in the opinion of the jury, be a fair, just and reasonable enjoyment of the right in each particular case. Perhaps, as the case was presented on the trial, it was not practicable for the judge to lay down a more definite rule on the subject. Still, difficult as it is, and has been found to be in many cases, it is important that a precise, intelligible and definite principle should be established, by which each case of this description, to which it is applicable, shall be governed.

In this opinion, HINMAN, J., concurred.

WAITE, C. J. The plaintiff can not sustain an action of ejectment to recover possession of flats alone, adjoining navigable rivers, and arms of the sea, situated below low-water mark, unless such flats have been redeemed from the sea, by the erection of wharves, piers, or something of the kind thereon. The possession in such case is not in any private individual, but in the public. The ownership of the land adjoining the flats may, by our law, confer the right of wharfing in front of that land, but gives no possession of the flats to the adjoining proprietor. He may, by proper process, prevent an encroachment upon the flats in front of his land, which may affect his right of wharfage, but he can not sustain an action of ejectment to recover possession of that, of which by law he can have no possession.

In the present case, the only property which the plaintiff seeks to recover, and the only property which can be recovered in the present action, are the shop and pier erected by the defendant, upon the flats in front of his own land; and to these erections, in my opinion, she shows no title.

Simons, her husband, in his lifetime, by his deed, conveyed to Weed and others, not only the land therein described, but as incident to that grant, the right of wharfage

upon the flats adjacent to that land, and of course there remained in him no interest in these flats, which the plaintiff could subsequently take, either under his will, or by the distribution of his estate.

And as on the trial she claimed no other title except such as she had thus acquired, I see not why the decision of the judge on the circuit was not right, that she had failed to show any title to the shop and pier erected by the defendant.

For these reasons, I see no cause for disturbing the verdict, or entering into a discussion of the other questions that have been made.

New trial advised.