## THE NEW HAVEN STEAMBOAT COMPANY *vs.* SARGENT & COMPANY.

A portion of the flats lying between the upland and low water mark on the sea-shore, was conveyed by the owner of the upland by metes and bounds, leaving a portion of the flats lying outside, between the part conveyed and low water mark, the part conveyed cutting off all access to the outer part from the upland. Held that the grantee took the right to reclaim and use the outer flats with the portion of the flats definitely conveyed.

No claim had been made for thirty years to these outer flats by the owner of the upland. Held that if the grantee were to stand on a title acquired by adverse possession of the portion conveyed, such possession would be regarded as embracing the outer portion of the flats as appurtenant.

The plaintiff and defendant were adjoining owners of reclaimed land on a harbor, with the right of wharfing out. The line of the shore was substantially east and west, and their dividing line at right angles to it, while the channel ran north-east and south-west. In wharfing out in a line with their dividing line, it would be necessary to go twenty-four hundred feet to reach the channel; while in wharfing out in a south-easterly direction and at right-angles to the channel, it would be necessary to go but fifteen hundred feet. The parties had reclaimed the flats for a short distance and in a line with their dividing line. Held that their rights were to wharf out in that line and not in the more direct one.

CIVIL ACTION to recover wharfage collected by the

defendants, at a wharf which the plaintiffs claimed to own; brought originally before a justice of the peace and, by appeal, to the Court of Common Pleas. The defendants were a joint stock corporation. Facts found by a committee and case reserved for advice. The case is sufficiently stated in the opinion.

*C. R. Ingersoll* and *T. E. Doolittle*, for the plaintiffs.

*J. S. Beach*, for the defendants.

CARPENTER, J. The defendant collected a small amount of wharfage for the use of a wharf in New Haven. The plaintiff, claiming to be the sole owner of the wharf, brings this suit to recover the amount thus collected. The case is reserved for the advice of this court.

Each party claims title to the *locus in quo*, not by virtue of any deed embracing it, but by virtue of its ownership of other property in the immediate vicinity. The situation of the property is substantially this :—The northern boundary of New Haven harbor is a line at high water mark, running substantially east and west, and is practically the southern line of Water street. Running north from Water street is East street. The plaintiff owns or claims to own a strip of land eighty-three feet wide and fourteen rods long lying on the south side of Water street and on the east side of East street extended across Water street into the harbor. About two hundred feet south of the plaintiff's land, at a point in the flats directly east of the east line of East street extended, is a sewer constructed by the city of New Haven. That sewer is covered for its protection, and in such a manner as to constitute a substantial wharf. It was at this point that the wharfage in question was collected.

The defendant owns a lot of land directly south of Water street and west of East street extended.

Neither party disputes the title of the other to the premises covered by its deeds, but the nature and origin of the plaintiff's title is the subject of some contention ; and each

party denies that the other has any title to or interest in the *locus in quo* or sewer wharf. Both parties claim that the city has no interest therein. The defendant claims that the plaintiff's title, if it has any, is by adverse possession and embraces only the land actually occupied, and does not carry with it the right to erect wharves on, or to reclaim, any other part of the shore; and also claims that if the plaintiff has any title by deed, the deeds only purported to convey flats and do not convey any interest beyond the exterior boundaries of the deeds, and consequently that the plaintiff has not the incidental rights of a riparian proprietor. The plaintiff claims that he has a good title by deed and has all the rights of a riparian proprietor.

In 1807 Water street was a highway about two and one-half rods wide, running east and west along the bank on the northern boundary of the harbor of New Haven. In that year the committee of the proprietors of the common and undivided lands and the selectmen of the town of New Haven, contracted with Isaac Tomlinson, he agreeing to build a sea-wall below high water mark so as to make Water street four rods wide. In consideration thereof the committee and selectmen executed a conveyance purporting to convey all their proprietary rights, with some reservations not important now to be noticed, in the flats extending eight rods from the south line of the highway southerly towards the water. That deed was on condition that it was to be void if Tomlinson failed to build the wall and complete the street according to his contract. Tomlinson also agreed to keep the road in repair and save the town harmless from any expense by reason of its being out of repair. The contract and the deed also provided that the premises conveyed should be subject to a lien in favor of the town to secure the performance by Tomlinson of this last named agreement.

In 1825 the sea-wall and the street were not completed. Pursuant to a vote of the town, and of an arrangement with all parties concerned, the details of which are unimportant, the selectmen released the incumbrance and the interest of

the town in the premises to William Moseley. Moseley and others completed the sea-wall and the street, and thereupon, by virtue of the conveyances mentioned, whatever rights might legally be conveyed thereby vested in Moseley.

The strip of flats described in the deeds, and lying easterly of East street extended was reclaimed. In 1852 the committee of the proprietors executed a deed purporting to convey to Moseley a strip of flats east of East street extended and south of the eight rods previously conveyed, which has also been reclaimed. The title to the land thus reclaimed is now in the plaintiff.

It is claimed that the proprietors and the town had no title to the shore which could be conveyed. This must be conceded, as the title to the shore, as is now well settled, is in the state. But it is equally well settled that a riparian proprietor has an easement in the adjoining shore, including the right to erect wharves, stores, &c., thereon. And while the deeds may have conveyed no title to the fee, whatever franchise or right the proprietors or the town had to reclaim the shore or construct wharves thereon, was conveyed to and vested in Moseley.

Whether they had any such right depends in some measure upon facts and circumstances which do not appear in this case. They then had the right of reclamation or they had not. If they owned the bank, or if they had sold it reserving the right to reclaim the shore, then the right was in them and it passed to Moseley. If they had previously sold the land north of Water street bounding on the street, and the law is so that that deed conveyed the fee to high water, and there was no reservation of the shore, then we suppose the purchaser took the right to reclaim, and the deeds conveyed nothing to Moseley.

We will assume that the first supposition is the correct one, and that the proprietors had a right which they could convey. In that event the whole arrangement contemplated that a strip of the shore next to the line of high water should be reclaimed and made a part of the permanent highway. It also contemplated that Moseley should re-

claim another portion of the flats south of the highway eight rods wide.  We think it will best give effect to the intention of the parties, and do no injustice to any one, to regard those two strips of land thus reclaimed as upland, and that the title in fee vested in Moseley, whereby he became the riparian proprietor—his riparian rights however being subject to such legal qualifications as may exist by reason of the fact that his deeds in terms conveyed only a portion of the flats.

The question now to be considered is, whether Moseley took any interest in the flats beyond the exterior lines of the premises conveyed.  Ordinarily a question of this kind would be answered in the negative, unless it had reference to a deed of land bounding on a highway, river, shore, or the like.  Such would be the general rule; but we think this case may well form an exception to such a rule.

Had the proprietors owned a fee in the shore then the ordinary rule would doubtless apply, for they then would have owned the shore as they did other property and might have sold it in such portions as they pleased.  But they had no title to the fee; they only had an incorporeal right in the shore, which was an incident to their ownership of the upland.  That such a right may be separated from the upland and sold or retained apart from it has been decided by this court.  *Simons* v. *French*, 25 Conn., 346.  And we suppose the principle of that case may admit of a territorial division of a right of this character.  But we think such a right cannot be entirely separated from the principal thing to which it is appurtenant.  To illustrate : a party may sell a portion of his upland reserving his right to all of the shore.  In that case he has access to the shore over the portion of land not sold.  He may also sell all of his upland reserving the shore.  In that case he expressly or by implication reserves a right of way over the land sold to the shore.  If he sells the shore without the upland he in like manner grants a right of way to it; the principle being that he who has a right to reclaim the shore must in some manner have access to it.  Of course each case must depend

upon its own circumstances. When he has access to it independent of the adjoining shore the suggestions we have made do not apply. The circumstances of each case should be interpreted reasonably and so as to give effect to the intention of the parties so far as it can be done consistently with well-established legal principles.

In *Simons* v. *French* the intention of the parties not to convey the portion of the shore in dispute was apparent. The grantor sold only a portion of the upland, carved out by definite and precise boundaries, thus indicating an intention to convey nothing beyond those lines. He also in the same deed conveyed a specified portion of the shore, not including the disputed premises. In this case the deed carved out by definite lines a portion of the shore, thereby excluding from the direct operation of the deed that portion not described. So far the cases are parallel; but here there is a divergence. In that case, after the conveyance the grantor had access to the shore. In this case the grantors had none. The part sold was shore next to the upland, and included all the shore on the line of high water east of East street extended. As the part conveyed was comparatively of little value until reclaimed, and, when reclaimed, the cost of reclamation represented nearly its entire value, there is no room for the presumption that the grantors reserved a right of way over it to the flats beyond.

Again : it is probable that the deeds from the proprietors, under which the plaintiff claims, were limited to a portion of the flats on the supposition that the proprietors owned the shore in fee. If so it is by no means certain that there would have been such a limitation if it had been certainly known that they only had a franchise. In this view of the case we do not necessarily impute to them an intention to divide an incorporeal right in the manner indicated. What they would have done had there been no misapprehension as to their legal rights it is impossible now to tell. Hence we do not base our decision on this ground, but simply allude to it as a circumstance we have not overlooked.

Again : it is now about thirty years since the last deed

to Moseley was given. During that time it does not appear that the proprietors, or the town, or any one claiming under them or either of them, have made any claim whatever to that portion of the flats now in controversy. The fact that no claim has been made and no right asserted for so long a period of time, affords some presumption that no such right exists.

Finally: public policy dictates that the right to reclaim land and construct wharves should be in some one in respect to all parts of the shore in a harbor like that of New Haven. Now if the plaintiff has not that right in the premises we are unable to discover from this record that any one has, unless indeed the defendant's claim is valid, that it has a right to extend its wharves in that direction—a point we will presently consider. It will be observed that the defendant does not point out any right or interest outstanding in any other party; and it is especially noticeable that in respect to the point now under consideration the defendant can have no controversy with the plaintiff, because the deed from the proprietors to Jesse Leavenworth in 1771, under which the defendant claims, is limited by definite boundaries to a portion of the flats extending eight rods on the south line of Water street and extending southerly ten rods, which, as the case shows, falls far short of reaching low water. We might well have taken this point for granted, and have conceded to each party the right, as each claims it, to extend its land to low water or to the channel. But as the point was made and elaborately discussed, that the plaintiff was not a riparian proprietor, and as we have carefully considered the subject, we have thought best to express an opinion upon it.

In view of all the circumstances of the case we have come to the conclusion that, as between these parties, the plaintiff is in law a riparian proprietor. Not that we are prepared to lay it down as a rule that a sale of the bank necessarily carries with it all interest in the shore, but our decision rests upon the peculiar circumstances of this case. The proprietors, supposing themselves to be the owners in

fee, sold their right or interest in a portion of the shore by metes and bounds; and their interest in the remaining portion, which was by implication reserved to themselves, was thereby completely severed from the upland. Whether incorporeal property of this character, which can only be enjoyed in connection with the corporeal property to which it is appurtenant, can be completely severed from it may be doubtful. If it is to be done it should be in clear and unmistakable language. We are not disposed to produce such a result by construction. If there is room for doubt whether such a result was really intended, and the party interested in claiming it has rested quietly for over thirty years without asserting his right, we may well presume that he has abandoned it; especially as the right, if it exists, is merely of a nominal value.

But take the other alternative, and suppose that the proprietors had no right in the shore which they could convey; then Tomlinson and Moseley took nothing by their deeds; for the grantors had neither the fee nor the right to reclaim. The only effect of the deeds was to give color of title and to furnish some evidence that the grantees occupied under a claim of right.

The case then is simply this:—those under whom the plaintiff claims, without any legal right, but under a claim of right, entered the shore next to the upland and reclaimed it. It then became upland, and fifteen years adverse possession gained a title.

The defendant however insists that the title thus gained was only commensurate with the user. That is doubtless true in respect to the land itself, but it is doubtful whether the rule ever applies to an incorporeal right appurtenant to the land. If the right is of such a character that it can only be enjoyed by him who is in possession of the land, then title to the land by possession carries with it a title to the right. And that is this case. The disseisor intervened and placed a piece of his own land between the upland proprietor and the shore. He thereby interrupted the right of the proprietor to extend his own land by a wharf or

New Haven Steamboat Co. *v.* Sargent & Co.

other structure to low water. That interruption having continued for fifteen years the right is gone. Suppose for illustration that the part disseised had been on the other side of the line of high water, and the proprietor had been in that manner cut off from the shore, can it be doubted that he would thereby have lost his interest in the shore? The result is the same in either case and must be attended with the same legal consequences.

But the defendant, claiming to be a riparian proprietor, and that it has a right to extend its land or wharf to the channel, insists upon the right to do so in such a manner as to embrace the *locus in quo.* And that brings us to the only remaining question, which is, in what direction do the riparian rights of the parties extend?

The east and west boundary lines of the land of each party run nearly north and south. The line of low water in front of each is nearly parallel with the southern boundary or line of high water and from six to eight hundred feet therefrom. Had that also been the line of the channel we suppose no question would have been made about the propriety of extending the upland lines to the channel. That would have been the natural and obvious as well as a reasonable mode of division. But the channel, commencing at a point quite a distance easterly of the plaintiff's land, runs in a south-westerly direction to a point further west than the western boundary of the defendant's land. The defendant can reach the channel or deep water by extending its land directly south about twenty-four hundred feet. It can also reach the channel, and practically at right angles with it, by extending its land in a south-easterly direction about fifteen hundred feet. Extended in this direction it covers the sewer wharf. The right to do this is what the defendant claims.

The cases cited by the defendant in support of its claim— that it has a right to extend its land in the most direct course to the channel—are of two classes. Some of them relate to the channel and involve the right to construct wharves, while others relate to low water line and involve questions in respect to the division of the shore.

In cases where the line of the channel and the line of low water are substantially the same or are parallel, no confusion arises and the rule is easily applied. But where, as in this case, they differ, one or the other must be adopted as the line to be reached to the exclusion of the other. It is impossible to adopt both without producing an irreconcilable conflict of rights.

We think in this case each party has a right to extend its upland in the most direct course to the line of low water.

In the first place, that is practically the rule which the parties and their respective grantors have adopted heretofore. The defendant's bank has been extended in that direction ten rods and the plaintiff's fourteen rods. To change the direction now would produce great confusion, while a continuance of the lines as begun will effect an equal division of the flats, and in a manner not obnoxious we think to any just rule hitherto established.

In the next place, each party thereby obtains reasonable wharfing facilities. As soon as low water is reached, if not before, the party has a wharf suitable and convenient for many purposes. It is not accessible at all times, nor at any time to larger vessels, but a wharf equal in most respects, if not all, to the wharf which is the subject of this controversy. The law guarantees to each riparian proprietor only such wharfage facilities as the condition of the harbor and the situation of his land with reference to it will afford. If he has less than others it is his misfortune.

But if either party desires to extend his wharf to the channel, and thereby make it accessible to larger vessels, he can do so by extending his land about nine hundred feet further than would be necessary in the direction for which he contends. Here again he has no cause of complaint. He must take his riparian rights as he finds them. If he has to go a greater distance to reach deep water it may be his misfortune, but it is no reason why he should interfere with the established rights of others.

Judgment is advised for the plaintiff.

In this opinion PARK, C. J., and LOOMIS, J., concurred.

PARDEE, J. (dissenting.)  By several conveyances the plaintiff has become the owner of the riparian proprietor's right to reclaim and use a definitely limited fragment of the shore upon New Haven harbor, extending fourteen rods seaward, eighty-three feet and four inches along the upland, the south and west lines being parallel respectively with Water and East streets.  The grant is in terms of the grantor's *right in flats.*  So far as the record discloses the riparian proprietor retained, and to this present retains, the upland, together with the right to reclaim and use that portion of the shore appurtenant thereto not included in the above mentioned grant.  In *Simons* v. *French,* 25 Conn., 346, this court determined that he might divest himself of his right to reclaim and use the shore and retain his upland; also that he might divest himself of this right to a specifically described portion of the shore and retain the remainder. Under this decision, whenever a grantee accepts a deed which expressly bars him from any portion of the upland and confines him to the right to redeem and use a fragment carefully carved from the shore, located by reference to monuments and measured in inches, I think he is ever after to be restrained within his self-imposed boundaries; and if he makes his portion solid with earth or stone that he does not thereby supplant the riparian proprietor and become one himself; does not take to himself the right reserved to that proprietor to redeem and use the portion of the shore not specifically conveyed.

Inasmuch as this suit is for money received for the use of a wharf outside of the boundaries of the grant to the plaintiff, I think judgment should be for the defendant.