HEBER H. HANFORD and another *vs.* ST. PAUL & DULUTH RAILROAD
COMPANY.

June 10, 1889.

On Reargument, April 3, 1890.

Riparian Rights.—The person entitled to the exclusive right to possess and
use land abutting on a navigable lake or river is also, though he does
not own the fee, entitled to enjoy the riparian rights incident to the
land.

Same—Condemnation of Upland.—And so, where a railroad company
procured to be condemned, for its use, land abutting on the Bay of St.
Louis, it acquired the riparian rights belonging to it, although the pe-
tition for condemnation made no express mention of such rights.

ON REARGUMENT.

Riparian Right of Reclamation—Severance from Upland.—The right
of a riparian proprietor upon navigable waters to improve, reclaim, and
occupy the submerged lands out to the point of navigability, although
originally incident to the riparian estate, may be separated therefrom,
and be transferred to and enjoyed by persons having no interest in the
original riparian estate.   Overruling *Lake Superior Land Co.* v. *Em-
erson,* 38 Minn. 406.

Same—Condemnation of Upland.—A condemnation by a railroad corpo-
ration of the upland abutting upon the water, *held* to embrace also the
incidental riparian right of improvement and occupancy of the submerged
lands, although no specific mention is made of riparian rights.

**Same—Petition held Sufficient.**—The specific mention and including in the same petition of riparian rights in respect to other lands belonging to other persons, *held* not to affect this construction of the petition and proceedings in respect to the land in question.

Plaintiffs, claiming to be the owners of certain land in St. Louis county, brought this action in the district court for that county to restrain the defendant from constructing a railway track in front of their land and between it and the dock line in the Bay of St. Louis, thus cutting them off from access to navigable water. The action was heard before *Stearns*, J., upon the pleadings and an agreed statement showing the facts to be as follows: In September, 1869, the Lake Superior & Mississippi Railroad Co. (to all of whose franchises, rights, and property the defendant has succeeded) filed its petition in the district court for St. Louis county for the condemnation of 35 different tracts of land, belonging to different owners, for the purposes of its railway and pursuant to its charter. The description of the tracts numbered 3, 4, and 5 was by metes and bounds, followed by the words "so as to include riparian rights and privileges" (in the 3d) or "including all riparian rights," in the 4th and 5th. The description of the 6th tract was as follows:

"*No. 6.* Commencing on section line between sections 3 and 4, township 49 north, of range 14 west, at the northeast corner of block one in the town of Rice's Point; thence north on the said section line to a point 950 feet south of the northeast corner of section 4 of said township; thence northwardly by a line parallel to and 200 feet from the centre line of the railroad located through said tract to a point 100 feet south of the centre of the main line in lot 4, section 33, township 50, range 14 west; thence southwesterly on a line parallel to the centre line of said railroad, and distant 100 feet from said line, into the Bay of St. Louis, including all the premises between the lines so described and the said Bay of St. Louis, as designated on said Exhibit A," [which was a map, filed with the petition.] "That so much of said premises as lies within lot 1, section 4, township 49, range 14 west, is owned by the Western Land Association, E. C. Clark, E. F. Ely, John A. Thompson, and North Albert Posey."

Commissioners were thereupon duly appointed, and in their report

(duly filed December 27, 1869) they awarded as compensation for the taking of the land above described the sum of $800. In each instance the commissioners, in their report, follow the descriptions in the petition, and make no mention of riparian rights except in case of the three above-mentioned tracts numbered 3, 4, and 5. The railway company thereupon entered into possession, and Posey, on January 22, 1870, appealed from the award. On January 16, 1873, Posey, while his appeal was still pending, platted into town lots a tract of 11 acres, calling it " The North Albert Posey Tract on Rice's Point"—the plat being made and recorded without the company's consent, and at a time when that part of the platted tract which was included in the above described tract No. 6 was actually occupied by the company for railway purposes.

Prior to the beginning of this action the plaintiffs, Heber H. Hanford and Alva W. Bradley, acquired and still hold all Posey's interest in certain of the platted lots and blocks. The land thus conveyed to plaintiffs and described in the complaint lies west of the easterly line of tract No. 6, described in the condemnation proceedings, and borders upon the navigable waters of the Bay of St. Louis. Such of it as is upland or above low-water mark is within the boundary lines of said tract No. 6, and the rest of it is below low-water mark and between the shore line of tract No. 6 and the dock line established in 1883, by the city authorities of Duluth, pursuant to Sp. Laws 1881, p. 62. This dock line in front of tract No. 6 is about 850 feet from the shore, the intervening space being covered with water naturally too shallow to admit of navigation by the class of vessels generally visiting the harbor of Duluth.

In 1877 the defendant acquired all the property, rights, and franchises of the Lake Superior & Mississippi Railroad Co., and in 1879, pursuant to Laws 1879, c. 82, and before Posey's death, paid into court the amount of the award for tract No. 6, with interest. Afterwards, in 1886, these plaintiffs and one Edward L. Bradley, brought ejectment against this defendant and the Northern Pacific Railroad Co. for the lands described in the complaint, in which action judgment was rendered for the defendants. (See Bradley v. Nor. Pac. R. Co., 38 Minn. 234.) Upon these facts the court ordered judgment

for the plaintiffs; a new trial was refused, and the defendant appealed. The case was first argued at the April term, 1889, when the first of the following opinions was filed.

*Ensign, Cash & Williams,* for appellant.

*Wm. W. Billson,* for respondents.

GILFILLAN, C. J. In 1869 the Lake Superior & Mississippi Railroad Company, to whose rights this defendant succeeded, commenced proceedings in the county of St. Louis to condemn for its use for railroad purposes lands in that county, some of them lying near to or touching upon the Bay of St. Louis, or on Superior Bay, or on Lake Superior. The petition by which the proceedings were instituted described the land more particularly involved here by describing certain lines and then continuing: "Including all the premises between the lines so described and the said Bay of St. Louis," so that the land thus described abuts on the bay. The description makes no mention of riparian rights. The petition described 35 distinct tracts of land, parts of which were proposed to be taken, in three of which descriptions of lands to be taken were these or equivalent words: "Including all riparian rights and privileges." The award of the commissioners followed the petition in this respect. The condemnation proceedings were carried to a close by the assessment of damages for the taking, and payment thereof. Opposite the land thus taken and involved herein, between the water-line of the bay and the point of navigability, is shallow water for a distance of several hundred feet into the bay. In this space of shallow water, and in front of and about 60 feet from the water-line, the defendant has commenced the construction of a railroad track, driving piles for that purpose. The plaintiffs, claiming through conveyance from the owner at the time the petition for condemnation was filed, bring this action to enjoin the defendant from constructing its railroad in said shallow water. No question is made as to the validity of the condemnation proceedings. A question is made as to their passing to the defendant the riparian rights appurtenant to the land taken, or rather as to their divesting the owner of such rights. It must be apparent that the action must be determined on the right of the plaintiffs. If no right of theirs is invaded or ob-

structed, they have no cause to complain. The question then is, did the owner of the land retain, after its condemnation, the riparian rights appurtenant to it?

One reason urged here why those rights remained in the owner unaffected by the condemnation is that, in describing three tracts, the petition specifies the appurtenant riparian rights as sought to be condemned, while, in describing this particular tract, it is silent as to such rights, and they are consequently excluded from the property to be condemned, and therefore the consideration of the value of those rights was necessarily excluded in awarding compensation for the taking. In this collateral proceeding it must be presumed that the award allowed all the damages that the owner was legally entitled to for taking the tract. The basis for estimating the damages is ordinarily the value of the land taken. If the value be enhanced by advantages it enjoys by reason of its situation, as by abutting on a principal thoroughfare, or on navigable water, no part of the value thus given to it can be excluded in estimating the damages. And it is the same if it be rendered valuable chiefly by having rights appurtenant to it which can only be enjoyed in connection with it. A piece might be taken to which there was no access except by an appurtenant right of way over adjoining lands. The value could not be estimated for the purpose of taking, leaving the right of way out of account. So that, if we are to construe the omission of any mention of riparian rights in the description of this particular tract in the petition as an attempt by the company to exclude such rights from the condemnation, and from consideration in estimating the damages, those rights were still to be considered in estimating the value of the land, and went with it, unless, upon such a condemnation, the riparian rights could be severed from it so that the exclusive right to occupy and use the latter might pass to the company, and the enjoyment of, or right to enjoy, the riparian rights appurtenant to the land might remain in the owner. This question we will consider further on.

Much of the argument in the case was devoted to the question whether, by the condemnation, the company acquired the fee of the land, or only the right to exclusively use and occupy it, the respondent

contending that, in the former case, the riparian rights might go with the land, while, in the latter, they might be severed from the use of the land and remain in the owner of the bare fee. In view of the character of riparian rights, it is immaterial whether the company got the fee or only the exclusive right to use the land. They do not constitute an independent estate. They exist only as incident to the abutting land. They pertain to the use of the land in connection with the water, or of the water in connection with the land, and they cannot be severed so as to be rights in gross, not appurtenant to any land in connection with which they may be used and enjoyed. *Lake Superior Land Co.* v. *Emerson*, 38 Minn. 406, (38 N. W. Rep. 200.) They consist mainly of the right to enjoy free communication between the shore and the navigable waters of the lake or stream, and for that purpose to build and maintain suitable landings, piers, and wharves in front of the land out to the point of navigability, and to that extent to exclusively occupy, for such and like purposes, the bed of the lake or stream, subordinate to the public paramount right of navigation. For the reason that such rights cannot be severed from the shore, a deed by the owner of the shore, in terms conveying the soil under the water,—but not conveying the shore land,—was, in the case cited, held inoperative to affect riparian rights. For the same reason a reservation of those rights in a conveyance of the abutting land would be ineffectual. The right existing for the benefit of the abutting land, to render its use more available in connection with navigation, it would seem to follow necessarily that one who has the exclusive right to occupy and use the shore as a means of access to the water is entitled to enjoy the riparian rights incident to its situation. If this were not so, then there might be presented the case of an existing right of use in the shallow water, and in the soil under it, while no one was entitled to the actual enjoyment of it. For, as the right of using must be exercised and enjoyed in connection with the use of the land to which it is incident, the owner of the fee of the shore land, if he had no right to go upon nor use the land for passing to and from the water, or any other purpose, could not, of course, exercise the incident right; and, unless the person having the exclusive right to use the land could also exercise and enjoy the incident

right, then no one could. The case of *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114, differs from this in the particular just mentioned. That was a case of a public street running along the bank of the Mississippi river. By the dedication, (or condemnation, if the street is established in that way,) the public acquire the right to use the land only for street purposes, the chief of which is for passage along it. But there remains in the owner—aside from the fee— a right distinct from that of the public,—the right to use the street in connection with his abutting property; especially for ingress and egress to and from it. The public right of use, in the case cited, was not exclusive so as to cut off the plaintiff's communication between the land and the water, and he could therefore use and enjoy the riparian right. We conclude that the defendant, having the exclusive right to possess and use the shore, has also the right to possess and enjoy the riparian rights appurtenant to the shore.

Order reversed.

----

After the filing of the foregoing opinion a petition for reargument was filed, and was granted July 16, 1889; and the cause was again argued at the October term, 1889.

*Ensign, Cash & Williams* and *Geo. B. Young*, for appellant.

*Wm. W. Billson*, for respondents.

DICKINSON, J. After the filing of our decision in this case, (*supra*, p. 104,) a reargument was ordered, upon the application of the respondents; it being considered that great public interests were involved which deserved further consideration by the court, with the aid which further research and argument might afford. The principal question to which such reargument was directed was whether the riparian rights which the owner of land abutting upon navigable waters enjoys in the submerged lands between the outer boundary of his ownership in fee and the point of navigability, may be alienated or be severed from the riparian land, so as to exist as rights or property in gross. In our former decision in this case we declared such rights to be incapable of separate existence, and upon that proposition the decision rested. In the reargument of this question the

principles of the law and the authorities which could be deemed in any way to bear upon it have been exhaustively and ably presented by learned counsel upon both sides, and, although this principle had been understood to have been settled in *Lake Superior Land Co.* v. *Emerson,* 38 Minn. 406, (38 N. W. Rep. 200,) we have, in view of the importance of the subject, entered into a full examination and reconsideration of it.    We have been thus led to the conclusion that the proposition that the riparian proprietor's peculiar right of occupancy and use of lands beyond the boundary of his ownership in fee is inalienable and incapable of existence, apart from the right of occupancy and use of the adjacent bank, should not be adhered to. While our former decisions were deemed to be in strict accordance with legal principles, and to follow logically from the fact that the riparian rights came into existence as incidents of the proprietorship of the adjacent shore, we are satisfied that we did not sufficiently consider, in their bearing upon the question, the peculiar nature, extent, and relation of the private and public rights, respectively, in the lands lying between the boundary of the riparian owner's fee and the point of navigability, and that undue importance was given to the fact that these riparian rights have their origin in the relation of the riparian lands to the water, and are properly incident or appurtenant to the riparian lands.

As we proceed now to notice the nature and extent of certain rights growing out of riparian proprietorship, we desire that attention should be given to the facts that those rights partake largely of the ordinary qualities of private property, which is in general divisible and transferable by the proprietor; that they are recognized as valuable property rights in the law; that they are of such a nature that they may be enjoyed separate from the adjacent land to which they were originally appurtenant; and to the absence of substantial reasons, so far as the nature of these rights are concerned, why they may not exist independently of the adjacent riparian estate.    We do not affirm that all riparian rights are thus severable.    Some, from the very nature of things, may be incapable of separate existence.

In this state the title of the proprietor of lands abutting upon navigable waters extends to low-water mark; the bed of the stream or

body of water, below low-water mark, being held by the state, not in the sense of ordinary absolute proprietorship, but in its sovereign governmental capacity, for common public use. *Union Depot, etc., Co.* v. *Brunswick,* 31 Minn. 297, (17 N. W. Rep. 626,) and cases cited. The estate or interest of the riparian owner in the bed of the stream above low-water mark is subject to the right of the public to use the same for the purposes of navigation; but, restricted only by that paramount public right, the riparian owner enjoys valuable proprietary privileges, among which we shall consider particularly the right to the use of the land itself for private purposes. A considerable extent of the shores, not only along tide-waters of the ocean coasts, but on our great inland waters, are of such a nature, out to and even beyond low-water mark, as to be in general unavailable by the public for the purposes of navigation, and must remain forever waste and useless lands, unless reclaimed by artificial means from the shallow water covering them, or unless otherwise improved. It is established beyond question in this state, and in other states as well, that the proprietor of the riparian lands may make such improvements. Subject only to the limitation that he shall not interfere with the public right of navigation, he has the unquestionable and *exclusive* right to construct and maintain suitable landings, piers, and wharves into the water, and up to the point of navigability, for his own private use and benefit. *Rippe* v. *Chicago, D. & M. R. Co.,* 23 Minn. 18; *Brisbine* v. *St. Paul & Sioux City R. Co.,* Id. 114; *Morrill* v. *St. Anthony Falls Water-Power Co.,* 26 Minn. 222, (2 N. W. Rep. 842;) *State* v. *Minneapolis Mill Co.,* 26 Minn. 229, (2 N. W. Rep. 839;) *Carli* v. *Stillwater Street Ry., etc., Co.,* 28 Minn. 373, (10 N. W. Rep. 205;) *Union Depot, etc., Co.* v. *Brunswick,* 31 Minn. 297, (17 N. W. Rep. 626;) *Lake Superior Land Co.* v. *Emerson,* 38 Minn. 406, (38 N. W. Rep. 200;) *Dutton* v. *Strong,* 1 Black, 23; *Yates* v. *Milwaukee,* 10 Wall. 497. And it is obviously immaterial, if the public interests be not prejudiced, whether the submerged land be covered with wharves of timber or stone, or be reclaimed from the water by filling in with earth so that it becomes dry land. The land may be so reclaimed. *Union Depot, etc., Co.* v. *Brunswick,* 31 Minn. 297, (17 N. W. Rep. 626;) *Clement* v. *Burns,*

43 N. H. 609; *Bell* v. *Gough*, 23 N. J. Law, 624; *Providence Steam-Engine Co.* v. *Providence & S. Steamship Co.*, 12 R. I. 348, 363. As the right of private use and enjoyment of the improved or reclaimed premises will continue so long, at least, as it does not interfere with the limited and defined public interests, it is obvious that, in general, it may continue forever.

This private right of use and enjoyment is not, we think, limited to purposes connected with the actual use of the navigable water, but may extend to any purpose not inconsistent with the public right. *Rippe* v. *Chicago, D. & M. R. Co.*, 23 Minn. 18; *Brisbine* v. *St. Paul & Sioux City R. Co.*, Id. 114; *Parker* v. *West Coast Packing Co.*, 17 Or. 510, (21 Pac. Rep. 822.) As was said in *Morrill* v. *St. Anthony Falls Water-Power Co.*, 26 Minn. 222, 228, (2 N. W. Rep. 842,) referring to the decision in *Dutton* v. *Strong*, 1 Black, 23: "The right to encroach upon the shallow water of the lake, by an exclusive appropriation even of the underlying soil, must rest upon the proposition that the riparian owner may make any use of the lake or river opposite his land not inconsistent with the public right." The following language of the *Morrill Case*, just cited, although used with reference to the riparian right to use the water of a navigable stream, is applicable here: "The limit to the private right is imposed by the public right, and the private right exists up to the point beyond which it would be inconsistent with the public right." No one but the riparian proprietor has the right to improve and occupy such premises for private purposes, and it does not concern other persons how or for what particular purposes the reclaimed lands may be used, so long as there is no violation of the maxim, *sic utere tuo ut alienum non lædas*. It is for the interest of the state that such lands, not available for the public purposes for which alone the state exercises authority over them, shall be improved and used for profitable enterprises, rather than that they lie forever waste and unproductive. And the state, while recognizing the ancient riparian right of occupancy, has not assumed to prescribe or to limit the purposes or manner of its enjoyment. That seems to have always been left to the discretion of the person in whom the right is exclusive, and the decided

cases afford many illustrations of uses in no way connected with the purposes of navigation.

This right of the riparian proprietor, even before it has been in any manner exercised by reclaiming or improving the premises,—the *right* itself to reclaim, improve, or occupy,—is a *property* right, vested in him, recognized and protected in the law as property. He cannot be deprived of it without due process of law. It cannot be taken from him, and devoted to public use, without compensation. *Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114; *Carli* v. *Stillwater Street Ry., etc., Co.*, 28 Minn. 373, (10 N. W. Rep. 205;) *Union Depot, etc., Co.* v. *Brunswick*, 31 Minn. 297, (17 N. W. Rep. 626;) *Yates* v. *Milwaukee*, 10 Wall. 497; *Bell* v. *Gough*, 23 N. J. Law, 624; *Delaplaine* v. *Chicago & N. W. Ry. Co.*, 42 Wis. 214; *Lyon* v. *Fishmongers' Co.*, L. R. 1 App. 662. Such property is subject to the law of eminent domain. A railroad company, locating its line of road over such submerged lands, might acquire, by condemnation proceedings and the payment of compensation, the necessary right of way, divesting the riparian owner of so much of his property. But cannot the riparian proprietor voluntarily convey, for an agreed compensation, what the company could thus take from him by legal proceedings *in invitum?* If he were to convey by deed the right to occupy exclusively for railroad purposes the premises in front of the riparian lands, would not the company acquire a right to occupy and enjoy the use of the premises, although it took no interest in the upland estate?

These peculiar property rights of the riparian owner may constitute, estimated in connection with the riparian land, the chief value of the premises. It may even be that the whole value of such real property consists in the right to improve and occupy the submerged lands for private purposes. The extent of the riparian right in this respect is not measured by the value of the upland, nor by the distance to which the owner's estate may extend inland from the shore. The barest strip of upland, though wholly valueless and useless in itself, justifies the owner in the exercise and enjoyment of the privileges of riparian proprietorship to the fullest extent.

If it be true, as we have said, that the riparian proprietor may improve and occupy such premises in any manner not inconsistent with the public rights, it follows that, although the origin of this peculiar private right is referable to an adjacent riparian estate to which it was originally incident or appurtenant, still its nature and qualities are not in themselves such as to forbid its alienation, its separation from the riparian estate, and its enjoyment by others than the occupants of the upland. Its enjoyment need not be in aid of or associated with the use to which the upland is devoted, or for the benefit of the upland as such. Thus it is supposed that one acquiring a mere right of way for the purpose of access over the upland to the shore may acquire the riparian owner's right to occupy and improve the waste land beyond. *New Haven Steamboat Co.* v. *Sargent,* 50 Conn. 199. The upland may be used, and be useful, only for purposes to which the use of the adjacent submerged lands, even after reclamation, would be in no manner accessory. The upland may be owned and used exclusively for the purposes of a residence, a church, a hospital, a bank, or for any purpose wholly unconnected with the advantages incident to the adjacency of navigable water, or of the intervening waste land; and yet the proprietor might undoubtedly erect a wharf, or fill in solid earth, and allow others to use the wharf or reclaimed land. Nor would his right to allow others to use the wharf or made land, or the right of others to use it with his consent, depend upon there being also a license of access to such premises over the abutting upland. We suppose that the land-owner might grant to one having no riparian possession in the vicinity the right to use his wharf, or the improved or reclaimed shore-lands, for any purpose, whether connected with navigation or not, just as the owner himself might do. No individual whose rights were not prejudiced could complain; and so long as the public rights are not interfered with, the state is not interested to oppose such use, but rather is interested to encourage and sanction it, without regard to the fact whether or not the use be associated with the use of the upland.

It has been suggested in some cases that even though such rights cannot be wholly disconnected from riparian lands, and be enjoyed

in gross, yet if the person to whom the rights of the riparian proprietor have been relinquished has access to the premises over the next adjacent estate abutting upon the shore, he may enjoy such rights, although he has no interest in the estate to which they were previously incident, (see *New Haven Steamboat Co.* v. *Sargent,* 50 Conn. 199;) and this is spoken of as being possible in *Lake Superior Land Co.* v. *Emerson,* 38 Minn. 406, (38 N. W. Rep. 200.)  But this would seem to be inconsistent with the doctrine that such rights are not severable from the riparian estate to which they are by nature appurtenant.  The whole reason supporting that doctrine is the technical reason that the rights are merely incident and appurtenant to the abutting riparian land.  They were not originally incident to other estates than those adjacent to and in front of which only these privileges might be exercised.  The owner of a riparian estate had no peculiar privileges in the submerged land lying in front of the next adjacent estate.  If it be conceded that these rights may be separated from the parent estate, and be enjoyed by the owner of the next estate abutting upon the shore, there is no room for further contention.  If such separation is possible, it matters not whether the means of access and opportunities for enjoyment be through the next estate abutting upon the shore, or the next, or by means of a public highway leading to or past the premises in question, or by the navigable water, or in any other manner.  Any person who may acquire from the riparian owner his right to improve and occupy such premises may always have access to them by means of the navigable water,—a common highway.  He may acquire other means of access. We think that there is nothing in the matter of *access* which forbids the existence of these rights separate from the abutting estate.

In some jurisdictions it is considered that the adjacent riparian owner actually acquires title to the lands improved and reclaimed from the water, although the title was before in the state in actual proprietorship, (as in New Jersey;) and that he may then convey the reclaimed premises to persons having no interest in the upland.   See *New Jersey Zinc & Iron Co.* v. *Morris Canal Co.,* 44 N. J. Eq. 398, (15 Atl. Rep. 227;) *Bell* v. *Gough,* 23 N. J. Law, 624; *Goodsell* v. *Lawson,* 42 Md. 348, 362; *Nichols* v. *Lewis,* 15 Conn. 137; *Clement*

v. *Burns*, 43 N. H. 609. We do not wish to be understood as assenting to the proposition that the title of the state may be thus transferred by acts of the riparian proprietor which the state has no particular reason at the time for opposing. It may be doubtful whether the title does not remain unchanged, and whether if, in the future, it should become necessary for the state to broaden the navigable channel so as to embrace the reclaimed land, it would not have the right to do so. However that may be, we deem these decisions to lend some support to the doctrine that the riparian right to fill and reclaim and use the submerged lands for his own private purposes is not necessarily so annexed to his proprietorship of the upland that it cannot be severed. If the right to occupy and use the premises is transferable *after* they have been improved by the exercise of the legal rights of the riparian proprietor, we see no sufficient reason why his legal right to improve and occupy and use the premises should not also be transferable. If it be said that in the one case he has the legal title, and in the other he only has the valuable right of occupancy and improvement, with the power thereby to acquire the legal title, it may be answered that such rights are themselves ordinarily a proper subject of transfer.

It is remarkable that so few authorities are to be found directly deciding the question of the severability of such riparian rights. The question was directly decided in *Simons* v. *French*, 25 Conn. 346, it being held that the right of the riparian proprietor to wharf out to navigable water, over the flats, (the fee of which was in the state for the purposes of navigation,) was not inseparably incident to the upland estate, but was subject to conveyance or reservation by itself. It is claimed that *Simons* v. *French* was overruled or modified in *New Haven Steamboat Co.* v. *Sargent*, 50 Conn. 199. We do not understand the latter decision to have such an effect. The court was careful to declare that its decision was based upon the peculiar circumstances of that case, and, while there is language suggesting a doubt as to *Simons* v. *French*, in other parts of the opinion the essential doctrine of that case seems to be reaffirmed. To the same effect as *Simons* v. *French* is *Parker* v. *West Coast Packing Co.*, 17 Or. 510, (21 Pac. Rep. 822.) In *Yates* v. *Milwaukee*, 10 Wall. 497, the

owner of a lot on a navigable river, (Shepardson,) who had begun to
build a wharf in front of it into the river, conveyed to Yates the in-
terest he had in the wharf and in front of the lot to the centre of the
river, with the right of docking out and making a water front on the
river.   Yates built the wharf.   His right to maintain it came in
question in this action against the city.   His right was sustained,
although without any discussion of the question of severability.   The
court said: "We are of opinion that Shepardson, as riparian owner
of a lot bounded by a navigable stream, had a right to erect this
wharf, and Yates, the appellant, whether he be regarded as purchaser
or as licensee, has the same right."   The court seems to have re-
garded it as immaterial whether Yates's grantor owned the fee beyond
the shore line or not.   It would seem that Yates had probably a
way of access to the premises covered by the wharf by means of a
street leading down past the lot to the water, but we do not regard
this as of controlling importance.   See, also, *Bowman* v. *Wathen*, 2
McLean, 376.   In Massachusetts the fee of the riparian owner ex-
tends to low-water mark, not exceeding 100 rods beyond high-water
mark; but it is held subject to the general public right of navigation,
until the premises shall have been so improved as to exclude the pub-
lic use.   *Com.* v. *Alger*, 7 Cush. 53.   And so in Maine.   It would
seem that the real beneficial interest which the riparian owner en-
joys in such premises in those states does not greatly differ from the
rights of riparian owners in this state.   But it is there held that he
may convey his upland without the submerged lands, or the latter
without the former.   *Storer* v. *Freeman*, 6 Mass. 435 ; *Barker* v. *Bates*,
13 Pick. 255; *Deering* v. *Long Wharf*, 25 Me. 51.   These authorities
may be regarded, at least, as supporting the proposition that there
is nothing in the essential nature of the riparian owner's right to
improve and occupy such premises which forbids its separation from
the riparian estate.

We have thus considered that the riparian proprietor has the ex-
clusive right—absolute as respects every one but the state, and lim-
ited only by the public interests of the state for purposes connected
with navigation—to improve, reclaim, and occupy the submerged
land, out to the point of navigability, for any private purpose, as he

might do if it were his separate estate; that this *right*, even though it may never have been exercised, is recognized and protected by the law as *property*, of which he cannot be deprived even by the state without just compensation; that the enjoyment of the right—the use of the premises—need not be associated with the use of the upland; that it is for the interest of the state that such waste lands be improved and rendered profitable, while the state is not concerned as to whether the owner of the adjacent upland, or some person to whom he may release his right, make the improvement and enjoy the private benefit; that the rights of other persons are not involved in the question; that when the land has been reclaimed it may be conveyed, according to most of the authorities, apart from the original upland; and that, according to other authorities, the riparian right may be transferred to and enjoyed by the owner of the next adjacent riparian estate.    From these considerations, as well as from the authorities cited bearing directly upon the question, we think that the quality of alienability should be deemed to belong to this kind of property, as it does to property in general.   See opinion of Bramwell, B., in *Nuttall* v. *Bracewell*, L. R. 2 Exch. 1, 11.   The only reason opposed to this is the technical one that the right grows out of, and, until severed, is incident to, a riparian estate.   We have come to feel that this is unsatisfactory as a reason why such property should be deemed inseparable from the parent estate, and incapable of a separate existence.    If the right in question were created out of, or enjoyed at the expense of, some other estate or property, and were measured and limited by the needs or use peculiar to the riparian estate to which it is annexed, there would be ground for others to urge that the right could not be changed or transferred so as to enlarge the scope of a grant or contract, or so as to prejudice the party complaining.   But no such conditions exist.   The rights of no one are affected by allowing the riparian owner to convey away this part of his property as he may his other property.   It is only an abstract question whether the right, originating in custom, and having originally attached as an incident to his riparian lands, may now be sold and conveyed, and be enjoyed by the purchaser.   It is for the inter-

est of the riparian owner that he be allowed to dispose of or use his private property at his own discretion. It is for the interest of the public that such property be subject to purchase and use, where the owner may be incapable of improving it. No one is interested in opposing such unrestricted alienability and use.

Although we have become convinced that the better reason is opposed to our former decision upon this point in *Lake Superior Land Co.* v. *Emerson*, 38 Minn. 406, (38 N. W. Rep. 200,) we should have deemed it better that a rule of property, although so recently declared, should not be disturbed, were it not that it is supposed that the result of that decision, if adhered to, would be very seriously prejudicial to the tenure of a large amount of very valuable property, which for a long time has been deemed and treated as alienable and enjoyable apart from the riparian lands, and which, according to our present opinion, was rightfully so treated prior to our decision in the *Emerson Case*. The case before us shows that in front of the riparian land described in the complaint the reclaimable submerged land extends into the Bay of St. Louis about 850 feet to a dock line legally established under the authority of the state, (subsequent, however, to the condemnation by the railroad company;) and this condition of things is understood to be very general along the shores of the navigable waters about Duluth. Such lands have been platted and sold to various persons, and have been to a considerable extent improved, and, so far as the state is concerned, have practically become private property. No one but the owners of the original riparian estate can question the rights of the purchasers; and in the case of *Miller* v. *Mendenhall, supra,* p. 95, which was submitted and is decided in connection with this case, we hold that, notwithstanding the decision in the *Emerson Case,* a grantor may be estopped by his covenants from disputing the title of his grantee in respect to such lands. We think that we ought to go further, and hold that the riparian right to improve, reclaim, and occupy such premises is transferable.

As we reverse our former decision upon this point, upon which alone this case was determined at the former hearing, it becomes necessary to consider whether, upon other grounds, the condemna-

tion proceedings had the effect to vest in the railroad corporation the right to use and occupy for its proper purposes the submerged land beyond the shore.

We deem it unnecessary to decide whether the interest appropriated by the condemnation proceedings was the whole estate in fee-simple, or only an easement. We will assume that it was only an easement. The corporation acquired the right to the exclusive and perpetual use, for railroad purposes, of the premises which were the subject of the proceedings. Until in some manner the riparian rights should be severed from the riparian estate, they would remain properly incident and appurtenant thereto. They would pass by a conveyance of the upland, as being appurtenant, although not specifically designated in the deed. So they would be embraced in a lease of the riparian estate. As in the case of alluvial formations along the shore, the person entitled to the exclusive possession and enjoyment of the riparian land would be also entitled to the benefits legally incident thereto. If in the condemnation proceedings the land appropriated be described in terms fitly designating merely the riparian estate, that would be deemed to include the rights incident to that estate, unless, at least, the terms of description were such as to indicate a contrary intention,—an intention to separate the incidental rights from the principal estate,—or unless in some other manner such intention were made manifest. In proceedings for the taking of the riparian estate, the title of which extends to low-water mark, and from which the rights incident to riparian proprietorship had not been in any manner severed, it is to be presumed, in the absence of anything showing a different intention, that the latter were included. Whether, in such proceedings, (the land-owner not consenting to a separation of his riparian rights from the principal estate,) a corporation would have the power to appropriate to its use the upland estate merely, neither making compensation for nor assuming to acquire the riparian rights incident thereto, we do not determine.

The condemnation proceedings in question embraced 35 distinct tracts of land. These were separately designated in the petition, the several parcels being numbered consecutively from number one up-

wards, the tract in question being the sixth. The land was described by metes and bounds on the landward sides, no line along the shore or water side being given. The last of the lines given is described as extending "*into* the Bay of St. Louis," the description concluding, "including all the premises between the lines so described and the said Bay of St. Louis." The award of commissioners describes the premises appropriated in the same manner. In the same petition, and in respect to the parcels of land numbered 1, 3, and 5, there were added to the specific descriptions of land the words, "including all riparian rights and privileges," or words of similar import; and it is contended that from the express including of such rights as to such parcels, and from the absence of any reference to riparian rights in respect to the tract in question, it is apparent that it was not intended to embrace them in the condemnation of this land. We think that the conclusion is not justified by this circumstance. While there was but one petition for the appointment of commissioners, the proceeding relates to several parcels of land belonging to different persons, and which in the petition are treated as entirely distinct. The legal effect, as respects the construction of these several descriptions, is not different from what it would have been if separate petitions had been made as to each of the several tracts. In such a case the owner of one of the parcels would not be justified in claiming that the express mention of riparian rights in the petition as to other lands should be deemed to change or modify the natural construction of the terms employed to designate his land, there being no express mention of riparian rights in connection with the latter. There may have been peculiar reasons for the express mention of riparian rights in connection with the other lands embraced in the petition now before us. The relation of those descriptions to that in question is too remote to safely admit the language, adopted with reference to the former alone, to qualify or affect the terms selected for the special purpose of describing the latter particular tract. For these reasons it is considered that the result expressed in our former decision in this case was right, and should not be changed, and the order appealed from is reversed.