NORTHERN PACIFIC RAILROAD COMPANY and Others v. SCOTT & HOLSTON LUMBER COMPANY.

June 15, 1898.

Nos. 11,050—(144).

**Plat of Shore and Submerged Land—Alley—Railway Right of Way in Trust—Conveyance Thereof—Shore Rights Appurtenant to Right of Way.**

The owner of certain lands bordering on the Bay of St. Louis platted them, including a portion of the submerged lands appurtenant thereto, and made and recorded a plat thereof, on which was indicated a public alley 30 feet wide in front of one of the shore blocks. Next in front of this alley lines were drawn on the plat embracing a tract of submerged land 200 feet in width, which was the outermost lot or tract platted. Its exterior line, which was the outermost line on the plat, was marked, "Property Line of L. S. & M. R. R." The railroad company then occupied this tract with its railway track, and afterwards the platter conveyed the tract to it. *Held*, that the riparian rights originally incident to the shore block were severed therefrom by the plat, and attached to the outermost tract.

**Same—Conveyance of Right of Way—Description—Inclusion of Riparian Rights.**

The deed by which the tract was conveyed contained other lots of land, but the description thereof was wholly disconnected with the description of the tract in question. The description of certain of the lots was followed by the statement that it included riparian rights. No such words followed the description of the tract. *Held*, that the riparian rights which the platter had annexed to the tract passed by the conveyance thereof.

Appeal by defendant from an order of the district court for St. Louis county, Moer, J., denying a motion for a new trial. Affirmed.

*Billson, Congdon & Dickinson,* for appellant.

It would do violence to the intent of the parties and would be a misapplication of the rule in Gilbert v. Emerson, 55 Minn. 254, to hold that this plat, notwithstanding the peculiar circumstances under which it was made, operated to transfer and attach to the railroad right of way the riparian privileges originally incident to the lands platted as Block 14. The specific proposition which that de-

cision embodied was somewhat novel, the only direct precedent for it having been, as we believe, Goodsell v. Lawson, 42 Md. 348. The decision was not intended to ignore the recognized rule that ordinarily there are not, incident to the ownership of tracts of submerged land, riparian rights similar to those which are attached to the ownership of the shore. There is no trace in the law of the existence of any such rights as naturally or presumably incident to the ownership of or right of occupancy in a defined area of submerged land. If the grantee of such a tract gets rights of occupancy beyond its defined limits, he must get them not as a natural or presumptive incident of his ownership of the submerged tract, but because his grantor, by an express or implied act of his will, has artificially annexed such rights to the defined submerged tract, or has otherwise described and included them in his conveyance. Turner v. Peoples Ferry Co., 21 Fed. 90. Although the right-of-way deed was not executed until March 1, 1873, the railroad had been constructed across the land four years before, and the plat described and treated this right of way as already belonging to the railroad company. The plat discloses upon its face that in some way the railroad company had acquired the right of way, or had definitely arranged for it, prior to the execution of the plat. Hence the railroad right of way was shown upon the plat merely for purposes of symmetry and convenience. Hanford v. St. Paul & D. R. Co., 43 Minn. 104, is not in point, because it is not shown that the riparian privileges ever became annexed to the strip conveyed to the railroad for right of way purposes. A conveyance to a railroad company of a right of way lying entirely in water away from the shore is not adequate evidence of an intention on the part of the owner to invest the railroad company with the riparian privileges which were previously incident, not to the strip of submerged land conveyed, but to the shore land behind it. New York v. Aldridge, 135 N. Y. 83. Whatever might be the implications of the plat standing alone, the deed of March 1, 1873, negatives any claim that it was the intention to pass to the Lake Superior & Mississippi Railroad Company riparian rights as incident to the tract in question. The terms of this deed would thus seem sufficient to exclude riparian rights in the case of the tract in question, by force of the maxim, "expressio unius

est exclusio alterius." Hare v. Horton, 5 B. & A. 715. Neither were these riparian rights described in nor covered by the deed to the Northern Pacific Railroad Company of March 20, 1874. If the defendant was not previously the owner of these riparian rights, it became such by the deed of November 16, 1895, from the Western Land Association.

*Washburn, Lewis & Bailey,* for respondents.

No riparian estate passed by the deed of the land company to Russell, which conveyed the lots constituting the southerly half of block 14 according to the plat. Under the doctrine of Gilbert v. Emerson, 60 Minn. 62, the platting of the alley in front of block 14 effectually cut that block off from the enjoyment of any riparian rights, even had there been no additional reason apparent from the face of the plat which evinced such intention. No riparian rights passed by the deed of November, 1895, by the land company to defendant. The plat contemplated on its face that the exterior line of the 200-foot strip was to be treated as the shore line. By its deed of March, 1873, to the Lake Superior & Mississippi Railroad Company it recognized that it had not heretofore conveyed anything as to block 14 except the block itself, according to the plat. It recognized and treated as "land" the strip in question between Blocks J and K, which it had platted as a strip. It conveyed this strip, the outermost platted portion, without reservation. It made no reservation of any riparian rights except as to lots in block K, and the maxim, "expressio unius est exclusio alterius," applied to the reservation of riparian rights in this conveyance, would not help the defendant's contention. A different construction should not be given because a deed runs to a railway company. Hanford v. St. Paul & D. R. Co., 43 Minn. 104, 110.

START, C. J.

This was an action to determine adverse claims to certain lands and submerged lands lying on and in the Bay of St. Louis. The trial in the court below involved the rights of the respective parties to several tracts or lots, with the riparian rights appurtenant thereto, but on this appeal the contest is limited to the question of the ownership of the submerged lands or riparian rights originally in-

cident to the lands which were afterwards platted as odd-numbered lots 341 to 351, both inclusive, of block 14, Duluth Proper, Second Division. The trial court made its findings of fact upon this question, and found that the plaintiff company was the owner of such riparian rights, and that the defendant had no title or interest thereto or therein, and ordered judgment accordingly. The defendant appealed from an order denying its motion for a new trial.

The only error assigned is that the conclusions of law are not justified by the facts found, which are, so far as here material, substantially these:

In the year 1869 the Western Land Association owned the lands and adjacent shores of one corner of the Bay of St. Louis, lying at the base of Rice's Point on its westerly side. The Lake Superior & Mississippi Railroad Company in that year constructed along certain of the submerged lands, and some distance from the shore, its railway track, which its successors have ever since kept and maintained. In 1870 the Western Land Association made and filed for record the plat of Duluth Proper, Second Division, which embraces the premises in question. A copy of this plat, marked "Exhibit A," so far as here material, was made a part of the court's findings and appears on pages 30 and 31. On this plat, and on the southerly side of block 14, there was marked an alley, designated on the plat as "30-Foot Alley." The lots in the southerly half of block 14 front on this alley and the odd-numbered lots 341 to 351 extend into the water. Immediately in front of this alley, and towards the line of navigable water, lines were drawn on the plat, inclosing a tract of submerged land 200 feet in width, extending from block J on the east to block K on the west through the waters of the bay. The southerly line of this tract is the outermost line from the southerly half of block 14 into the bay, and is marked on the plat, "Property Line of L. S. & M. R. R." So far as appears from the evidence, the Lake Superior & Mississippi Railroad Company had no title to this tract 200 feet in width at the time the plat was made and recorded, other than may be implied, if at all, from its railway track being thereon, and from the plat itself. But thereafter, and on March 1, 1873, the Western Land Association by special warranty deed conveyed this tract to the Lake Superior & Mississippi Railroad Com-

pany, and the plaintiff has succeeded to its title thereto.   The association by the same deed also conveyed certain lots in blocks J, K, and G, in the same plat,

"Including all riparian rights and privileges belonging to any and all of the above described tracts, except such rights and privileges belonging to said lots in block K."

Then follows a separate description of the tract 200 feet in width above referred to, without any express mention of riparian rights. In 1874 the Western Land Association executed to the plaintiff a quitclaim deed of all that part of certain specified government lots and fractional 40s lying between St. Louis Bay and the southerly line of the 200-foot strip or railway right of way as shown on Exhibit A, including the water front and riparian rights and privileges thereto belonging. On March 15, 1872, the Western Land Association conveyed lots 341 to 351 in block 14 to B. S. Russell, from whom they passed by mesne conveyance to the defendant; and after the commencement of this action, and on November 16, 1895, the Western Land Association executed to the defendant its quitclaim deed of

"All that part of block 14 in Duluth Proper, Second Division, according to the recorded plat thereof, which lies on the southerly side of the center line of the alley dividing the said block into two parts, together with all the riparian rights and privileges now or at any time heretofore incident or appurtenant to said lands."

The land here in controversy is vacant and unoccupied. It was conceded by counsel for defendant on the argument that the riparian rights originally belonging to the land which is indicated on the plat as block 14 were severed therefrom by force of the plat of Duluth Proper, Second Division, and that they did not pass to Russell by the Western Land Association's deed to him; but it is denied that such rights were, by the plat, annexed to or became incident to the submerged tract marked on the plat, which was subsequently conveyed to the railway company. The defendant's claim is that the plat shows no intention on the part of the Western Land Association at that time to utilize its riparian rights by platting generally its submerged land into lots, blocks, streets, piers or slips; and,

HIBIT A.

Gov't Lot 5 Sec. 33

although the plat shows an intention to sever such rights from block 14, they were not annexed to the railroad tract, and it thereafter held and owned them as property in gross, which passed to the defendant by the Western Land Association's deed to it in 1895.

The plaintiff claims that it was the intention of the platter to sever the riparian rights which would otherwise have remained incident to block 14, and make the southerly line of the tract, 200 feet wide as shown on the plat, the shore line, to which the rights usually appurtenant to a riparian estate attached, and that such rights passed to the plaintiff by the deed to it of the tract; and further that if this be not so, and the Western Land Association, after the making of the plat, held the unplatted portion of the submerged land as property in gross, it passed to the plaintiff by its deed of 1874.

Whether the riparian rights originally belonging to the land which is now block 14 were by the plat, as to the submerged land in question, attached to the railroad tract, is a question of intention on the part of the platter. The right to do this is settled by the decisions of this court. Hanford v. St. Paul & D. R. Co., 43 Minn. 110, 42 N. W. 596, and 44 N. W. 1144. In ascertaining this intention we start with the conceded proposition that the Western Land Association intended to and did by its plat sever the riparian rights naturally incident to block 14 therefrom. See Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820. We are then to inquire only as to whether the plat shows an intention to attach such rights to the railroad tract, or to hold them thereafter as property in gross. Now, referring to the plat to ascertain the platter's intention, we find that the platting did not stop at the shore line, but that the submerged land was platted. In front of the southerly side of block 14 and in the water, a public alley 30 feet wide was platted. Then followed a tract of platted submerged land 200 feet wide, the exterior or southerly line of which is the outermost line of the plat, and the tract itself the outermost tract platted. There are no streets or alleys or right of way indicated across this tract or in front of it. This plat clearly indicates an intention to make the shore line coincide with the southerly line of this outermost platted tract. It is unreasonable to attribute to the platter an intention to retain a V-shaped

piece of submerged land, such as the land in question is, outside of the outermost platted tract, appurtenant to nothing, and inaccessible after the outer tract was conveyed by deed absolute.

But it is urged by defendant that this tract, which we have for convenience designated as the "railroad tract," was shown upon the plat merely for the purposes of convenience and symmetry; that it and its boundary lines were not the product of the plat, but were merely noted and described upon it to indicate their pre-existence and situation relative to the surrounding property, and that the railroad company had already acquired the tract by some means undisclosed by the record; hence there could be no intention to annex the original shore rights to this tract.

The findings of the trial court do not justify the assumed facts, but, were it otherwise, it would still be unreasonable to attribute to the platter an intention to retain any riparian rights in the submerged parcel of land lying beyond the railroad tract. If the Western Land Association had already conveyed or contracted to convey the railroad tract to the railway company, its plat and conduct are consistent only with the assumption that such conveyance or contract carried with the tract the right in the submerged parcel between the tract and the point of navigability, for by its plat it severed from block 14 the riparian rights incident thereto, and platted between it and the railroad tract a public alley. The words, "Property Line of L. S. & M. R. R.," on the plat, are not specially significant in view of the fact that the platter conveyed to the railway company by deed absolute, and not for the purposes of a right of way, the tract so indicated on the plat. Taking the plat as a whole, it is reasonably clear that it was the intention of the Western Land Association, by its plat, when it severed the riparian rights in question from the shore land, to transfer and annex them to the railroad tract, and that the exterior line of this tract was thereafter to be treated as the shore line.

It is, however, urged by the defendant that, whatever might be the implications of the plat standing alone, the riparian rights incident to the railroad tract after the making of the plat did not pass to the railroad company by the deed of March 1, 1873, for the reason that the express reference to riparian rights as to certain of the lots

73 M.—3

therein described necessarily excluded riparian rights as to the tract in question. A reference to the language of the deed referred to, which we have already quoted, will show that the maxim, "Expressio unius est exclusio alterius," has no application to the deed. The statement in the deed as to riparian rights has no reference to the tract in question, and it was at best an awkward reservation of such rights as to certain of the lots. The description of the tract in question in the deed is as separate and distinct from the lots to which the language in reference to riparian rights is limited as if it had been conveyed by a separate deed. There was no reservation of the riparian rights as to the tract in question, and the specific mention of such rights in respect to other and separate lands conveyed by the same deed does not affect or limit the grant of the former. Hanford v. St. Paul & D. R. Co., 43 Minn. 104, 42 N. W. 596, and 44 N. W. 1144.

Order affirmed.