[No. 466. Decided June 2, 1891.]

J. GARDNER KENYON V. ROBERT KNIPE, RICHARD HOLYOKE, CHARLES CRAIG, et al.

ESTOPPEL — RECORDED PLAT — TIDE LAND LOTS.

Where one purchases lots according to a recorded map or plat thereof, which are partly upland and partly tide land, with an alley and other lots platted over tide water in front of them, the purchaser is estopped from claiming any rights beyond the platted boundaries of his lots, as against the rights of the public in said alley, and of those in possession of the lots beyond such alley. (STILES, J., dissents.)

*Appeal from District Court, King County.*

Injunction by J. Gardner Kenyon against Robert Knipe, Richard Holyoke, Charles Craig, William Battia, Charles Brash, and Frank McCombs. Judgment for defendants, and plaintiff appeals.

*J. G. Kenyon, pro se, J. B. Howe, D. O. Finch,* and *E. C. Hughes,* for appellant.

The title of A. A. Denny extended only to high water mark of the waters of Elliott Bay, and his attempt to plat lots, blocks, streets and alleys below that line was a nullity, and no one could acquire any right by such void act. *Lake Superior Land Co. v. Emerson,* 38 Minn. 406 (8 Am. St. Rep. 679; 38 N. W. Rep. 200); *Pollard v. Hagan,* 3 How. 212–222; *Transportation Co. v. Brunswick,* 31 Minn. 297 (47 Am. Rep. 789; 17 N. W. Rep. 626); *Shively v. Parker,* 9 Or. 505; *Cleveland v. Choate,* 77 Cal. 73 (18 Pac. Rep. 875). Appellant is not estopped by said attempted platting of the sea by Denny from claiming, as owner of bank lots, all the riparian rights incident to such bank lots. *Hanford v. St. Paul, etc., Co.,* 43 Minn. 104 (42 N. W. Rep. 596); *Lyon v. Fishmongers' Co.,* 1 App. Cases, 662; *Welles v. Bailey,* 55 Conn. 292 (3 Am. St. Rep. 48; 10 Atl. Rep. 565).

*Thomas Burke,* and *C. H. Hanford* (*Andrew Woods,* of counsel), for appellees.

The effect of surveying and platting of land by the owner into lots, defining streets, alleys, etc., and the sale of lots under such plot, is equivalent to an immediate and irrevocable dedication to public use of all streets and alleys, binding upon vendor and vendee. 2 Dill. Mun. Corp. (2d ed.), §. 640, and cases cited; *Peck v. Providence Steam Engine Co.,* 8 R. I. 353; *People v. Lambier,* 5 Denio, 19 (47 Am. Dec. 273). The plat must be considered a part of the deed. 3 Washb. Real Prop. (4th ed.), pp. 428, 429, §§ 54, 55; Gould on Waters, p. 343. The rule of law is, that when lands are purchased and conveyed in accordance with a plat, the purchaser will be restricted to the boundaries as shown by the plat. *Trustees v. Schroll,* 120 Ill. 509 (60 Am. Rep. 275; 12 N. E. Rep. 246); *McCormick v. Huse,* 78 Ill. 363; *Miller v. Mendenhall,* 43 Minn. 95 (19 Am. St. Rep. 219; 44 N. W. Rep. 1141).

The opinion of the court was delivered by

HOYT, J.— The discussion in this case has extended over a broad range. Nearly every question connected with the subject of tide or shore lands, and the rights of riparian or littoral proprietors thereto, has been ably briefed and argued by counsel for the respective parties. Also the questions growing out of the making and recording of town plats, and the effect of the same, have been likewise presented. The conclusions to which we have come as to this second matter will make it unnecessary for us to decide the questions presented by the former, and, as they have been lately considered by this court in cases where a decision thereof was necessary, we shall here say nothing in regard thereto.

The facts, so far as they are necessary to the decision of this case, are substantially as follows: Arthur A. Denny

made and recorded his plat of an addition to the city of
Seattle, upon which certain lots, streets and alleys appeared
and were sufficiently described to show the intention of the
maker of the plat in regard thereto. It nowhere appeared
upon such plat where the line of ordinary high tide was.
On the contrary, so far as could be gathered therefrom, all
the territory covered by said plat was upland. As a matter
of fact, however, the line of ordinary high tide so crossed
said plat that a portion of lots 6 and 7, hereinafter men-
tioned, were above the line of ordinary high tide, and the
remainder of such lots, and all of lots 5 and 8, together
with the alley dividing the same, were below such line.
After the making and recording of said plat the said Denny
sold and conveyed to plaintiff herein lots 6 and 7 in block
B of said plat, after which said Denny sold and conveyed
lots 5 and 8 in said block, and said defendants, by mesne
conveyances, became possessed of the title thereby con-
veyed. Under said last named conveyance from Denny,
possession was taken and improvements made on said lots
5 and 8, and the alley dividing those lots from the lots of
plaintiff was planked over and used as a street several years
before the commencement of this action.

Under these circumstances we do not think it lies in the
mouth of the plaintiff to object to such improvements as
being an infringement upon his rights as a littoral proprie-
tor. The effect of the plat made by Mr. Denny was to
separate the tract thereby covered into distinct lots having
definite, ascertained boundaries, and into streets and alleys
as marked upon said plat, and to vest in the public such
streets and alleys for the purposes therein designated. That
such would be the effect as to such streets and alleys if the
territory covered was upland, and owned by said Denny, is
conceded, but it is contended that, as he had no title to the
land below the line of ordinary high tide, his plat, so far as
it purported to cover such lands, was absolutely void for

any and every purpose. With this contention we cannot agree so far as Mr. Denny himself is concerned. It is perhaps true that as to anybody having rights adverse to him such would be the effect, but it does not lie in his mouth to say that that which he has made of record is a nullity. He is estopped by the making of such plat from alleging its invalidity, and so far as he is concerned would not be heard to complain of the use by the public of the territory covered by streets and alleys, especially after the same had been taken possession of and improvements thereon made. This being the condition of Mr. Denny, and his relation to the title of the lots bounded and described in said plat, we think that one purchasing lots from him, by reference to said plat, could acquire no better title than he had. Of course, if one could acquire title independent of, or adverse to, that represented by Mr. Denny at the time of the making of the plat, this reasoning would not obtain as to him; but such is not the condition of plaintiff. Whatever title he has he obtained from Mr. Denny, and we think it elementary that, under the circumstances of this case, he could get no better title than that of his grantor. A deed conveying property by reference to a plat or map thereof, adopts such plat or map as a part of such deed, and one purchasing thereunder becomes bound by the boundaries of the lot purchased as they appear on said plat or map. Applying this rule to the case at bar, it will be seen that the plaintiff herein did not purchase lots bounded by tide water, but those bounded by a definite and defined line one hundred and twenty feet from the front of said lots, so that the lots he purchased were bounded and concluded on the one side by Front street, and on the other side by the alley next westerly thereof, and we think he is estopped by such fact from claiming any rights beyond such boundaries as against the rights of the public in said alley, and of those in possession of the lots beyond such alley. Unaided by

such plat, his deed is uncertain and void. Aided by it, it becomes a valid deed, but of a lot with definite boundaries, and he must be bound thereby. It follows that the plaintiff is not entitled to the relief prayed for, and the decision of the lower court in so holding must be affirmed, and it is so ordered.

DUNBAR and SCOTT, JJ., concur.

ANDERS, C. J., concurs in the result.

STILES, J. (*dissenting*). — Both parties in this case assumed that the riparian right of wharfage existed when the action was commenced. Substantially their only difference on that subject was that the appellant took the position that such rights were not severable from the ownership of the upland excepting by a conveyance clearly showing that to be the purpose of the grantor. The appellee, on the other hand, claimed that any deed describing upland, or upland and shore land, by metes and bounds, though the high water mark in either case should be the actual boundary, was sufficient for the severance of the right of wharfage and access to the sea from the upland. From the opinion of the court it does not appear clearly, as the fact was, that the land owned by Denny constituted a mere strip of some forty feet in width between Front street on the east and the line of mean high water mark on the west. This strip seems to have been a remnant left after the original plat of lands owned by Denny had been filed, and which he thereafter undertook to subdivide into lots. His plat was in the usual form, and had nothing upon it which indicated that there was any navigable water embraced within its limits. To the westward of the line of high water, and one hundred and twenty feet from Front street, he noted on his plat what appeared to be an open strip, but without any designation upon it that it was to be an alley, and to the westward of that other lots were

noted and numbered the same as those which embraced the upland. Kenyon met Denny in Olympia before the former had ever seen the plat, and spoke to him about the purchase of some of his "water lots." Denny told him he would reserve him two. Afterwards, in pursuance of this conversation, Denny executed to Kenyon a conveyance of lots 6 and 7 in one of these platted blocks. Across these lots, from north to south, the meander line extended. It does not appear whether Kenyon had at any time seen Denny's plat. Kenyon went into possession of the two lots by his tenant, and erected upon the lots, and extending therefrom over the shore some sixty feet, a building on piles, and used the building thus erected to the time of the commencement of this suit. The appellee took from Denny a quit-claim deed of lots 5 and 8 on the same plat, which lots were immediately to the westward and in front of the lots of the appellant. The appellee thereafter (and just when is not discernible) extended southward from other lots in the same block which he had purchased from Denny in like manner, a wharf over the area of lots 5 and 8. This action was brought to abate what appellant conceived to be both a public and a private nuisance in front of his lots and of his building and premises.

I am unable to understand upon what principle, in the light of the decision of this court in the case of *Eisenbach v. Hatfield, ante,* p. 236, the position is now taken that the appellant's main contention was not a good one. In that case it was decided — *first,* that a riparian owner now has no rights whatever as against the state or its grantee or licensee beyond the boundary of his land; and, *secondly,* that the act of 1854 was merely a permissive license which is not available unless it had been taken advantage of by the shore owner before the adoption of the constitution. This ruling denies any claim that Denny might have had that he had any right whatever beyond his

shore line, excepting as a licensee, under the act of 1854. He took no advantage of that license, and had no title, interest or claim whatever in the waters or the soil beneath them beyond the line of his land at the time he filed his plat. His plat, therefore, was utterly void for every purpose as to all that part of it which extended beyond the upland; and now to say that, notwithstanding he was not the owner of any land beyond the water line, nevertheless he could, by the mere filing of a plat, exercise an authority which would not only dedicate a street or alley out in the water, but also reserve to himself a title or a right still farther in the water, which he could convey to a grantee by a quit-claim deed, is incomprehensible to me. It was not decided, nor do I think it was intended to be intimated, in the case of *Eisenbach v. Hatfield*, that the owner of upland who had availed himself of the act of 1854 by erecting a structure in the nature of a wharf from his land into the water could not prevent a mere stranger, such as was the appellee, who confessedly acquired no title whatever from Denny, from creating a nuisance in front of him towards the deep water. The effect of this decision is to say that Denny, by his mere plat, could set aside the act of 1854, and, while giving to Kenyon more than the act of 1854 contemplated up to the west line of his lots, could absolutely deprive him from going therefrom to the deep water. In a word, this court, having rejected all forms of riparian rights, now concedes to a shore owner prior to the constitution rights which have never been conceded to him outside of Rhode Island and Minnesota, where he is said to have substantially the whole title to deep water.

I think the court is entirely mistaken as to the effect of such a plat. Section 2328 and following sections of the code do not say who may make or file a plat of a town, but simply provide that whoever shall thereafter lay off any town shall, previous to the sale of any lots, record a

plat, and that the effect of such a plat shall be to all intents and purposes the same as a quit-claim deed. Now, it is the first principle of platting, that the one who plats must be the owner in fee of the land platted. Says Angell on Highways (§ 132):

"Dedication is an appropriation of land to some public use, made by the owner of the fee."

And in § 134:

"A primary condition of every valid dedication is that it shall be made by the owner of the fee."

Herman on Estoppel (§ 1143) says:

"A primary condition of every valid dedication is that it shall be made by the owner of the fee or of an estate therein."

In *Lee v. Lake*, 14 Mich. 12 (90 Am. Dec. 220), Judge COOLEY said:

"The plat put in evidence was made by Brooks and Crane at a time when they do not appear to have had any interest in the land, and if the execution [of the plat] had been in all respects in due form it could not have the effect which the statute gives to plats executed and acknowledged under its provisions. The statute then in force provided for the making, acknowledging and recording of town plats by the proprietors; and it is impossible to give the peculiar statutory effect of a present conveyance to a plat made by persons who at the time had no title to convey, even though they may afterwards have become the owners. And as the healing act of 1850 was confined in its scope to imperfect acknowledgments, it could not give effect to a plat which no acknowledgment could have made effectual at the time it was made."

This decision was concurred in by Judges CHRISTIANCY and CAMPBELL. The case of *Hoole v. Attorney-General*, 22 Ala. 190, is considered a leading case upon this subject, and therein the court held not only that it must be the owner of the fee who could make a lawful dedication which the state even could take advantage of, but that if the land, at the time of the attempted dedication, was covered by a mort-

gage, that the mortgagor could not dedicate without the acquiescence of the mortgagee. In *Baugan v. Mann*, 59 Ill. 492, which was an injunction to prevent one who held title under Sprague, who, it was alleged, had dedicated an alley in the rear of appellee's premises, it was said :

"The evidence fails to show title in Sprague. Unless he owned the fee he could make no valid dedication to public use. A primary condition of every valid dedication is that it shall be made by the owner of the fee."

In *Porter v. Stone*, 51 Iowa, 373 (1 N. W. Rep. 601), the court said:

"The party who lays out a town site, the effect of which . . . is to donate to the public, streets, alleys, and public grounds, must of necessity have some title to the property to be affected by his act. A grant to the public is not established by simply showing that a town site has been laid out. The party claiming benefits from the grant must go further, and show the title of the party laying out the town, and thus undertaking to make the grant."

In *Leland v. City of Portland*, 2 Or. 46, where the question was whether a dedication of land in front of the city of Portland, between the Willamette river and the westerly side of the street, which was made before September 27, 1850, was of any validity, the court said:

"The next question presented is, did the court below err in refusing to instruct the jury that a dedication of the property in question, to be binding, and to divert the title from the donor to the public, must have been since the 27th of September, 1850? I regard this question as settled by the case of *Lownsdale v. Parrish*, 21 How. 290, which case arose on the question of the dedication of the levee in this same city of Portland, and by these same proprietors of the town site, and was governed by the same considerations in this respect as govern this case, where it was held that a dedication made prior to act of 27th of September, 1850, was void for want of any title in the donors at the time of dedication, the title then being in the United States."

In England the rule has been the same, the leading case being *Wood v. Veal,* 5 Barn. & Ald. 454, where it was held that a tenant for ninety-nine years could make no dedication to the public, nor could any one else excepting the owner in fee. The latest case upon this subject, and one which is almost exactly the same as the case at bar, is that of *Ruge v. Oyster, etc., Co.,* 25 Fla. 656 (6 South. Rep. 489). It seems that the original plat of the city of Apalachicola, located on the bay of that name, showed an open space, which was denominated on the plat as "Florida Promenade," and it was contended by the owner of land in the neighborhood that the dedication of the promenade carried with it the right to the public to have the waters of the bay in front kept clear of all obstructions. The court said:

"The dedication of the promenade by the Apalachicola Land Company was made more than fifty years ago. What right had the company to make a dedication extending into the bay? Even if the promenade reached the bay, the company had no right in the submerged lands thereof, and could not dedicate these. Admitting that accretions to the soil of the promenade would become a part of it, that was a contingency which did not authorize the dedication of lands under the water in front of the promenade."

Denny's plat was good to the water's edge. Beyond that it was void. Even Denny himself was not estopped to say as much. In such cases there is no question of estoppel. The real question is, do the facts show a dedication, either statutory or common law? *Hayes v. Livingston,* 34 Mich. 384 (22 Am. Rep. 533). Having had absolutely no title, or shadow or claim of title, the maker of the plat was free to deny it at any time, and so could any of his grantees of the upland, although their deeds purported to convey something which had an existence. Perhaps, on the whole case, the judgment of the court is right, however, as there was evidence tending to show laches on the part of Kenyon in

prosecuting his suit for injunction until the structures 'he complained of had been erected and used for a considerable period, and on this ground I can concur.