Argued 27 March, decided 21 May, 1907.

## GRANT *v.* OREGON NAVIGATION CO.

90 Pac. 178, 1099.

NAVIGABLE WATERS—WHARF RIGHT OF UPLAND OWNERS.

1. Under B. & C. Comp. § 4042, providing that the owner of any land lying on navigable water within the corporate limits of a city is authorized to construct a wharf on the same and extend it to navigable water, the upland owner is given a preference right or license to occupy land under water for wharfage purposes, the exercise of which becomes a vested right.

NAVIGABLE WATERS—RIGHT OF UPLAND OWNER TO WHARF OUT TO
CHANNEL—INCIDENTAL RIGHTS ACQUIRED BY PURCHASE OF UPLAND.

2. An upland owner was by the acts of 1872 and 1874 given the preference to purchase the tide land in front of his holdings, and if he exercised that privilege he thereby became entitled to the exclusive wharf rights to deep water, provided such right had not already become vested in another under prior acts, and as incidental to this wharf right he became entitled to all accretions to such tide land and to change the surface, so long as he does not interfere with navigation or commerce.

COLLATERAL ATTACK ON DEED TO PUBLIC LAND.

3. A deed from the state for tide land is not void because the line of high tide was further out than the land conveyed, so that it did not reach the water at all, but is only voidable for such defect, and not subject to collateral attack.

EFFECT OF CONVEYANCE OF SUBMERGED LAND—INTENT OF GRANTOR.

4. Although usually a deed to land having a water frontage carries the rights incident to such position, yet a deed of submerged land will be given effect as to riparian rights according to the intention of the grantor, and a description by metes and bounds or according to a plat strongly indicates a restrictive rather than an extensive intention.

Where a grantor conveyed by metes and bounds a portion of a lot below low tide, which was a part of a town plat containing other blocks between that and deep water, it sufficiently appears that such grantor intended that no riparian right should pass to the grantee, who was not, therefore, entitled to deep water frontage.

ADVERSE POSSESSION—EFFECT OF OCCUPANCY WITHOUT COLOR OF TITLE.

5. The effect of an open, notorious, continuous and exclusive occupation of real property, under a claim of right, for the period prescribed by the statute of limitations is to confer title to the ground actually so occupied, though there was no color of title whatever.

ALLOWANCE OF COSTS AND DISBURSEMENTS IN EQUITY.

6. The apportionment of costs in equity is entirely discretionary with the court under Section 566, B. & C. Comp., and in this case plaintiffs will be allowed their costs in the lower court, while defendants will recover their costs on appeal.

Where, on appeal by defendants in a suit to quiet title, a decree is rendered that plaintiffs are the owners of a portion of the property which was the subject of the suit, and their title thereto is quieted, they are entitled to their costs in the trial court, though adjudged to be without interest in the remainder of the property, defendants having denied plaintiffs' right to any of the property.

From Clatsop: THOMAS A. MCBRIDE, Judge.

Statement by MR. JUSTICE EAKIN.

This is a proceeding by Bridget and Peter Grant against the Oregon Railroad & Navigation Co. to quiet title to the property lying between plaintiff's lot and deep water, and to enjoin defendants from driving piles thereon. There was a decree for the plaintiff, and the defendants, Oregon Railroad & Navigation Co. and D. H. Welch, appeal. The land above high water, upon which the City of Astoria is situated, bordering upon tide water of the Columbia River, was the donation land claim of Shively and wife, and was platted by him into town lots and blocks as "Shively's Astoria," some of the blocks of which extend below high water; and afterward he platted other property wholly below low water, as "Shively's Second Addition to Astoria," which includes blocks 5 to 12, inclusive. The property owned by plaintiffs, and which they claim is riparian and gives them wharfage rights to deep water, is the south 75 feet of lot 5, block 8, of Shively's Second Addition to Astoria, and lies in a tier of blocks extending from the shore line north below low water, numbered as follows: Block 118 upland, 135 tideland (both in Shively's Astoria), and blocks 8, 7, 6 and 5 of Shively's Second Addition to Astoria, extending to or into deep water. Each of said blocks is 300 feet east and west and 125 feet north and south, containing six lots, numbered 1 to 6 from east to west, with streets 60 feet wide; Commercial Street lying east and west between blocks 135 and 8, Fourteenth Street lying north and south and west of blocks 135 and 8, Fifteenth Street lying east of said blocks, and · Sixteenth street the next street east. Block 134 lies immediately east of said block 135, and the shore line extends westerly through block 134 near the south side, and through block 135, to the southwest corner of lot 5 and passing south of the south line of lot 6, but north of the middle of the street, and the line of low tide being about the middle of Commercial Street, south of block 8. Taylor, the common grantor of plaintiffs and defendants, acquired title to the shore of lot 5, block 135, in the year 1865. This lot is

immediately south of the property in dispute, and the shore line
is north of the south line of that lot, and in the year 1871, while
Shively was the owner of portions of the shore between Four-
teenth and Sixteenth Streets, he conveyed to Taylor said blocks
5 to 12, which included all the ground from low tide to deep
water in front of blocks 134 and 135, and thereafter, in the
year 1875, Taylor conveyed by metes and bounds to the Oregon
Steam Navigation Co. all of said blocks 5 to 12 lying north of
a line parallel with and 75 feet north of Commercial Street,
which includes the north 50 feet of said lot 5, block 8.

Thereafter, on August 3, 1876, Rogers purchased from the
state the tide land fronting on lots 5 and 6 (formerly 2 and 3)
of block 118 in Shiveley's Astoria, and on November 14, 1881,
he conveyed to Taylor lots 4, 5 and 6 of said block 118 and the
tide land fronting on lots 5 and 6 thereof; and on November 15,
1886, Taylor conveyed to the plaintiff Mrs. Grant the south 75
feet of lot 5, block 8, describing the same by metes and bounds
with reference to said lot and block. And during the year 1876
the Oregon Steam Navigation Co. commenced the construction
of its wharf on the said ground purchased from Taylor, and
drove two rows of piling on the south line of its purchase, from
Fourteenth Street to Sixteenth Street, and covered the same
with planking most of that distance, the same being called a
roadway, and also drove a third row of piling outside of the
roadway as fenders, which roadway was connected with its main
wharf and warehouse at deep water (which wharf extended west
to the west line of Fifteenth Street) and was used by it for the
convenience of its boating until 1883, when it was destroyed
by fire. The piling still remains, but is burned down to the
water's edge, and the defendant Oregon Railroad & Navigation
Co., as successor to the Oregon Steam Navigation Co., threatens
to drive piles upon said property which plaintiffs seek to enjoin.
Since about 1884 plaintiffs occupied this piling immediately
north of their ground for a width of 13 feet, 5 inches, north and
south, and 50 feet east and west, for a platform, on which is
situated a woodshed and other conveniences to their building.

MODIFIED.

For plaintiffs there was a brief over the names of *J. Q. A. Bowlby* and *Fulton Bros.*, with an oral argument by *Mr. Chas. W. Fulton* and *Mr. George C. Fulton.*

For defendants there was a brief over the names of *W. W. Cotton, Thomas O'Day* and *James Gibson Wilson*, with an oral argument by *Mr. Wilson.*

Opinion by Mr. Justice Eakin.

1. The defendant, Oregon Railroad & Navigation Co., claims title to the wharfage rights in front of plaintiff's property by virtue of the conveyance thereof from Taylor to its grantor, the Oregon Steam Navigation Co., in 1875, and prior to the sale of the tide land by the state. By the legislative act of 1864 (Section 4042, B. & C. Comp.), it is provided that the owner of any land lying upon navigable water within the corporate limits of a city is authorized to construct a wharf upon the same and extend it below low water. Thus, the upland owner was given the preference right or license to occupy the same for wharfage purposes, and, if such license was exercised by himself or his grantee, it became a vested right: *Parker* v. *Taylor,* 7 Or. 435. Taylor, by his ownership of lot 5, block 135, and the conveyance to him by Shively, claimed the wharfage rights in front of said blocks 134 and 135 in 1875, under and by virtue of said Section 4042, B. & C. Comp. By Section 4043, B. & C. Comp., cities are authorized to regulate the exercise of a wharfage right by ordinance upon the application of the owner of such right, and on the petition of Taylor in October, 1875, the City of Astoria did pass an ordinance for that purpose, and by his deed to the Oregon Steam Navigation Co. in November, 1875, Taylor conveyed to it his wharfage rights, which included the north 50 feet of said lot 5, block 8. The Oregon Steam Navigation Co. commenced the erection of its wharf and warehouse at deep water and the erection of the roadway at the south line of the property conveyed to it by Taylor in the year 1875. It does not appear definitely when such construction was commenced or finished, but evidently the roadway had been constructed in July,

1876. However, whether it was constructed, or, if so, whether it was a sufficient compliance with Section 4042, B. & C. Comp., to vest title, is not necessary now to determine.

2. Plaintiffs claim that by virtue of their ownership of part of lot 5, block 8, lying below low water, they are thereby owners to the center of the stream and of the wharfage rights to deep water, as incident thereto, and by this suit seek to quiet their title to the same, as against defendants. Their right to such relief depends largely upon the effect of the deed from Taylor to Bridget Grant. If, by that deed, the low-water line were the boundary, with no reservation of the riparian right, it would pass as an incident thereto; but it is within the power of the riparian owner to separate the riparian rights from the ownership of the shore, and this is largely a question of the intention of the grantor. Originally the state was the absolute owner of the tide lands on the Columbia River and the rights incident thereto below the meander line out to deep water: *Bowlby* v. *Shively,* 22 Or. 410 (30 Pac. 154) ; *Shively* v. *Bowlby,* 152 U. S. 1 (14 Sup. Ct. 548 : 38 L. Ed. 331). By the legislative acts of 1872 (Laws 1872, pp. 129, 130) and 1874 (Laws 1874, pp. 76, 77), the upland owner was given the preference right to purchase the tide land, and upon such purchase, if not already vested in another under Section 4042, B. & C. Comp., he thereby acquired also the exclusive wharfage right to deep water, and also all accretions to his tide land and the right to fill up the shallows or flats, so long as he does not impede navigation or interfere with commerce over the same: *Miller* v. *Mendenhall,* 43 Minn. 95 (44 N. W. 1141 : 8 L. R. A. 89 : 19 Am. St. Rep. 219, 231). In *Parker* v. *Taylor,* 7 Or. 435, Judge BOISE says: "Land situated as this is, covered with shoal water, may, under proper regulations by the state and municipal authorities, be reclaimed from the sea by filling in or by driving piles and building on them, and becomes private property and the subject of sale the same as any other property. And as this state has given such mud flats to the riparian owner as a franchise, he alone may reclaim the same, under such regulations as the state has or shall prescribe": *Bowlby* v. *Shively,* 22 Or. 410 (30 Pac. 154).

3. On August 3, 1876, Rogers purchased from the state the tide land in front of lots 5 and 6, block 118, claiming that such lots extended to the meander line of the river, and received a deed therefor.   Defendants question the validity of Rogers' title to this tide land, for the reason that the high-tide line was upon the next block north, viz., 135; but, if so, the deed is not thereby void, but only voidable, and his title cannot be questioned collaterally.

4. When Taylor acquired the tide land in front of lot 5, block 135, by his deed from Rogers, in November, 1881, he thereby acquired all rights incident thereto in front of the high land below the meander line out to the channel of the river, if not already owned by the Oregon Steam Navigation Co.   This ground had all been platted into lots, blocks and streets, as Shively's Second Addition to Astoria, which plat was recognized by both Taylor and the plaintiff at the time of Taylor's conveyance to her.   Ordinarily a conveyance of land abutting upon the shore carries with it to the grantee therein all rights incident to the shore line; but, where land extending under the water is conveyed by metes and bounds, or the conveyance shows in any manner the intention of the grantor to reserve the riparian rights, the same will not pass to the grantee.   It is within the power of the riparian owner to separate the riparian rights from the upland, and in every case it would be a question of the intention of the parties whether it has been so separated.   Farnham, in Waters & Water Rights, § 724, in discussing the separation of riparian rights from the upland, says: "The separation may also be effected by a conveyance by metes and bounds which gives the line along the shore a definite location and indicates an intention that the title to the land under the water shall not pass.   The same result will be obtained by platting of land under the water so that the land on the bank is not riparian in the strict sense of the word.   Nor are any of the inside lots which are platted under the water riparian.   The question whether, by platting in a particular manner or by a grant, the owner of the shore of navigable waters dissociates the

rights incident to ownership of the shore from that ownership, is wholly one of his intention."

In *Goodsell* v. *Lawson*, 42 Md. 348, 366, a town was platted partly on the water. A lot upon the water was conveyed to Godman, which it was claimed entitled her to riparian rights. It is said: "It cannot be supposed for a moment that the owners of the projected town intended to confer on the purchasers of lots to be created from the water riparian rights such as we have been considering. * * This lot is partly on the land and partly in the water, and is located with reference to the town plat. It must therefore be construed with reference to that plat and the designs therein manifested. It will be seen, also, by an examination of the deed, that it does not call for a water line. The description is by courses and distances, and these must circumscribe the title of the purchaser." At page 373, it is said: "That deed conveyed by metes and bounds 'a lot of ground in the Town of Crisfield, being part of block No. 19 on the plat of said town,' and must be construed with reference to said town plat." In *Eldridge* v. *Cowell*, 4 Cal. 87, in the plan of San Francisco, the survey into lots and blocks extended into the tide water in front of the city. Plaintiff obtained his lot with knowledge of the plan of the city. It is held that it is not material to inquire as to the first authority for the plan of the city. The state's title vested in the lot owners, and plaintiff took without any riparian rights. In *Kenyon* v. *Knipe*, 2 Wash. 394, 397 (27 Pac. 227, 228: 13 L. R. A. 142), it is said: "A deed conveying property by reference to a plat or map thereof adopts such plat or map as a part of such deed, and one purchasing thereunder becomes bound by the boundaries of the lot purchased as they appear on said plat or map. Applying this rule to the case at bar, it will be seen that the plaintiff herein did not purchase lots bounded by tide water, but those bounded by a definite and defined line, * * and he is estopped by such fact from claiming any rights beyond such boundaries." To the same effect is *State ex rel.* v. *Forrest*, 12 Wash. 486 (41 Pac. 194). In *Gilbert* v. *Emerson*, 60 Minn. 62 (61 N. W. 820), it is held

that the plaintiff, having purchased a block of submerged land, is deemed to have purchased with reference to the plat showing the blocks and alleys: "It is not a case, therefore, where the outermost alley line is coterminous with the boundary line of the owner of the premises platted. * * Nor is this a case where this outermost alley line is the water-line boundary, and where, in such a case, it might be held that riparian rights would exist in behalf of a person who held the title to such line. * * This map, with reference to this alley line, must be construed so as to give effect to the intention of the maker thereof." In *Northern Pac. R. Co.* v. *S. & H. L. Co.* 73 Minn. 25 (75 N. W. 737), it is held that a platting of submerged land severed the riparian rights from the shore banks and attached them to the outermost tract. To the same effect is *Gilbert* v. *Emerson,* 55 Minn. 254 (56 N. W. 818: 43 Am. St. Rep. 502). This is also the effect of *Parker* v. *Taylor,* 7 Or. 435.

Taylor, by his deed to Mrs. Grant conveyed to her the south 75 feet only of said lot 5, block 8, being the portion of said lot lying south of the south line of the tract conveyed by him to the Oregon Steam Navigation Co.; there still remaining to himself or his grantee the north 50 feet thereof. And where, by reason of his tide-land ownership, he conveyed to plaintiffs by metes and bounds a portion of a lot below low tide, being part of the town plat containing other blocks between that and deep water, the intention of the grantor that no riparian rights shall pass clearly appears, and plaintiffs' rights are circumscribed by the description in the deed, and are not riparian; and therefore they are not entitled to deep-water frontage.

5. Plaintiffs also claim title by adverse possession to the property in dispute. They have shown no color of title to any of it, and therefore such claim can only apply to so much of the property as has been in their open, notorious, continuous and exclusive occupation under claim of right for the period of 10 years. Plaintiffs have been in such possession of the portion thereof covered by the old platform adjoining their building extending north 13 feet, 5 inches, and the full width of the lot,

viz., 50 feet; and it also appears that the building extends 1 foot 1 inch north of the north line of the property described in plaintiffs' deed. Therefore the decree of the lower court is reversed, and a decree will be entered here quieting plaintiffs' title to that lot or parcel of ground bounded as follows: Commencing at the northwest corner of the property conveyed by James Taylor to Bridget Grant by deed of date, November 15, 1886; thence north 14 feet 6 inches; thence east 50 feet; thence south 14 feet 6 inches; thence west 50 feet, to place of beginning— and that plaintiffs have no interest in the other portions of the property in dispute; defendant to recover its costs and disbursements in this court, and neither party to recover costs in the lower court.                                    MODIFIED.

---

Decided 16 July, 1907.

ON MOTION TO MODIFY AWARD OF COSTS.

MR. JUSTICE EAKIN delivered the opinion.

6. Petition of plaintiffs to modify the decree as to costs. In the decision of this case this court decreed costs to defendants on this appeal, and that neither party should recover costs in the trial court. Plaintiffs' counsel now urge, in view of the fact that by the final decree plaintiffs are adjudged owners of a portion of the property which was the subject of the suit, and their title thereto was quieted, they should recover their costs in the trial court; and we concede that this is correct. Defendants, in their answer, denied plaintiffs' right to any of the property, and set up title and right of possession thereto in themselves. Thus it appears that plaintiffs were forced to bring this suit to protect their title and possession to the portion thereof adjudged to them by this court. Therefore the decree will be modified to the extent that defendants shall recover costs upon this appeal, and plaintiffs shall recover against the defendants their costs and disbursements incurred in the lower court.                                    MODIFIED.