Argued November 13, decided December 2, rehearing denied December 30, 1913.

## RASMUSSEN v. WALKER WAREHOUSE CO.*

(136 Pac. 661.)

**Navigable Waters—Riparian Rights—Separation of Ownership.**

1. The ownership of the upland and adjoining land under water, whether tide water or fresh streams or rivers, may be separated.

---

*On the question of the separation of riparian rights from upland, see note in 40 L. R. A. 393.

The question of title to land under tide water is treated in a note in 42 L. R. A. 161.                                    REPORTER.

Navigable Waters—Riparian Rights—Separation of Ownership.

2.   The separation of ownership of land under water from that of the adjoining upland confers ownership of the water, so far as that can rest in an individual, on the owner of the bed of the stream.

Navigable Waters—Riparian Rights—Separation of Ownership.

3.   To separate the ownership of the upland and the adjoining land under water, the intention to do so must distinctly appear, and if the grant is in ordinary form, bounded by water, the land below as well as that above the water will pass.

Navigable Waters—Riparian Rights—Separation of Ownership.

4.   Land under water may be reserved in a grant by the reservation of a strip along the shore.

Navigable Waters—"Riparian Right."

5.   "Riparian right" is defined to be "a form of enjoyment of the land and of the river in connection with the land."

Navigable Waters—Riparian Rights—Land Bounded by Water.

6.   Under Section 5201, L. O. L., authorizing riparian owners in incorporated towns to build wharves, where a party conveys land bounded by water, though it is shallow and is intended to be reclaimed by filling, it will never be presumed that he reserves rights in front of the land conveyed, and the mere fact that the boundary is indicated by a line on the plat will not limit the grant.

[As to nature of riparian rights, and lands to which they attach, see note in Ann. Cas. 1913E, 709.]

Navigable Waters—Riparian Rights—Land Bounded by Water.

7.   By the platting and dedication of a tract of land bordering on navigable water, and by conveyances of lots with reference to the map, the riparian or wharf rights are severed from the inside lots and attached to the outmost ones.

Navigable Waters—Riparian Rights—Land Bounded by Water.

8.   A trust agreement, describing a tract of land as extending to low-water mark, and reciting that the parties were desirous of having the legal title in certain persons so that such persons could cause the tract to be surveyed into lots and blocks and properly dedicated, indicated an intention to plat and sell all the land to low-water mark.

Navigable Waters—Tide Lands—Title of State.

9.   The title of tide lands which became vested in the state upon its admission to the Union is subject to the paramount right of navigation existing in the public, and of Congress to regulate commerce between the states.

[As to title to land covered by navigable water, see note in 53 Am. St. Rep. 289.]

Quieting Title—Nature of Remedy—Adequate Remedy at Law.

10.   The remedy at law by ejectment is not adequate to determine the rights of a riparian owner to land under water adjoining his upland, and equity has jurisdiction.

From Coos: JOHN S. COKE, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit by Chris Rasmussen against the Walker Warehouse Company and Mary E. Walker to quiet title to certain real estate. From a decree in favor of plaintiff, defendants appeal.

The pleadings, in so far as is necessary to refer to them, show as follows: Plaintiff alleges that he is the owner and in possession of the following described premises: "Commencing at the southwest corner of lot 2, block 3, in Woodland addition to the town of Bandon, in Coos County, Oregon, as laid out, platted, and recorded by Robert Walker, his wife, Mary E. Walker, R. H. Rosa, and others, running thence northerly along said west line of said lot 115 feet and to the northwest corner of said lot as platted; thence northerly on said west line of said lot extended to navigable water of the Coquille River, to wit, to ship's channel of said stream; thence easterly along said ship's channel to the east line of said lot 2 extended northerly in a straight line; thence southerly on said line to the northeast corner of said lot 2; thence southerly and along the east boundary line of said lot 2, 127.5 feet, and to the southeast corner of said lot; thence west to the southwest corner of said lot and to the place of beginning. That plaintiff is likewise the owner and in possession of all the water and wharfage rights, easements, privileges, hereditaments, and appurtenances thereunto belonging and in front of and between said lot 2 and ship's channel of the Coquille River. That said Coquille River is a navigable stream."

The defendants answered separately, Mary E. Walker claiming a right of dower in the disputed tract not yet assigned or set off to her. They deny the title of plaintiff to that portion of the real estate lying be-

tween lot 2, as platted, and the navigable water of the
Coquille River.   They allege: That Robert Walker,
now deceased, was during his lifetime the owner in fee
simple of the lots mentioned in the complaint and of
other adjacent lots, all of which property he, by the
dedication, plat and survey filed and recorded in the
office of the county clerk of Coos County, Oregon, as
Woodland addition to Bandon, divided into streets,
blocks, lots, and alleys, in which plat and addition
Robert Walker was joined by R. H. Rosa and other
platters, owners of other property lying back of and
away from the river.   That said Walker was the
owner and the holder of the legal title of that part of
the addition affected in any way by this suit and bor-
dering on the Coquille River, including lot 2, block 3;
and all of said lands, rights, title, interest and riparian
and other rights in front of such lot.   That the said
plat, as duly filed and recorded, indicates lot 2 as a
piece of clear and well-defined limits.   That it clearly
and definitely shows a tract of land lying in front of
said numbered lot of substantially the following de-
scription, which is the tract in dispute, to wit: "Com-
mencing at the northwest corner of said numbered lot,
running thence north 50 feet to the navigable channel
of the Coquille River; thence east 50 feet; thence
south to the northeast corner said numbered lot;
thence westerly along the northern boundary said
numbered lot to the place of beginning."   That it was
the intention of Robert Walker and all parties to the
plat and dedication to sever the riparian and wharf
rights from all land lying back of the latter tract, and
to attach the riparian rights to the last-mentioned
tract of land.   That by such act of dedication the
land so dedicated on 'the plat as lying between lot 2
aforesaid and the navigable channel of the river was
the property of the deceased.   That plaintiff acquired
title from Robert Walker to lot 2, block 3, according

to the plat thereof, relying upon such for the description of the land, and not otherwise. That plaintiff should be estopped from alleging that he is the owner of the land fronting on lot 2 or of any rights outside the boundaries thereof as shown by the plat.

Plaintiff filed a reply putting in issue the new matter contained in the answer, and alleging in effect that lot 2 was contained in a parcel of land (which was particularly described) containing 39.89 acres, which was platted and dedicated as a part of Woodland addition into lots, blocks and streets embracing all that portion of the parcel of land lying above low-water line of the Coquille River. That the northerly row of blocks numbered respectively 1, 2, 3, and 4, and the streets dedicated between such blocks extended and still extend to low-water line of the Coquille River as shown by the plat. That defendant should be estopped from alleging that Robert Walker, now deceased, platted and dedicated said lots so that the same cannot be reached or touched by any street, alley or highway.

Plaintiff testified that he was the owner of lot 2, in block 3, and of the rights and privileges between such lot and the navigable channel of the Coquille River; that that space between the north line of the lot and the river is covered by water about two feet deep at ordinary low tide, and that various persons had used such space for several years, with his permission; that the driving of piling or the erection of a building of any kind or a structure between the north end of lot 2 and the navigable channel interfered with his ingress to and egress from said channel and would cut off all access, unless he crossed the private property of others; that there was no road or street touching said land, and the only ingress and egress was by the way of the Coquille River, a navigable stream in which the tide ebbs and flows; that he had been in possession

of this lot, wharfage rights, and privileges, rights of ingress and egress, for about three and a half years.

Mr. S. B. Cathcart, county surveyor, testified in substance that he surveyed Woodland addition for R. H. Rosa and Robert Walker; that in such survey he marked a small street along the waterfront between the low-water line and the line of the lots; that Walker objected to the same, stating that he did not want any street there. The surveyor does not remember all the details, but the plat filed for record shows no such street.

R. H. Rosa testified in effect that he owned an interest in Woodland addition with A. M. Crawford and Robert Walker, who, for convenience, held title to the tract as trustee for himself and the two others, they having bought the land together; that afterward this addition was laid off to low-tide line; that there is water on the north end of the Rasmussen lot at ordinary low tide; that he was in possession of the lot before Rasmussen owned it, and permitted various boats to use this space; that the ground in front of the lots is exposed for about 60 feet at the very lowest of the tides, which occur about once or twice a month; that Walker rubbed off the street that they had placed upon the plat, as he thought one Dwyer would have a monopoly of the waterfront in case a street was laid there. Rosa further testified that he and Walker wanted the lots in the north end of the addition to be waterfront lots; that Walker never represented during his lifetime that there was any strip of land in front of the lots, except that in front of the woolen-mill; that the lots would not have been of any value to anybody unless there had been some means of ingress and egress. He stated: "We dedicated those lots so as to get in to them from the river; sure, there was no other street to them, no other way to get out of there."

68 Or.—21

Harry Walker testified on behalf of defendants to the effect that he could not see any change in the formation now and when he first saw it; that he was 26 years old; that when the tide is at zero on the government gauge there is probably 50 feet of land bare in front of the Rasmussen land and 60 or 75 feet on the lower tides; that the Walker Warehouse Company is in possession of the land in front of the Rasmussen lot and have been using it for coal; that a stream about 200 yards above goes through this mud flat, flowing into the river; that the Trowbridge tide table is commonly used; that when the tide is at zero there are 40 feet exposed; that the land is a very gradual slope; that a foot above zero mark would cover the low-tide flat in front of the Rasmussen lot; that in order to expose this land in front of the latter lot it is almost necessary for the tide to go to zero on the government gauge; that the Walker Warehouse Company's wharf was built for the purpose of holding possession.

On the twentieth day of October, 1890, Robert Walker, R. H. Rosa, and A. M. Crawford entered into a trust agreement, in which they recite that ''the parties to this indenture were desirous of having the legal title in and to all of the said premises hereinafter described in the name of the parties of the first part (the Walkers) for convenience so that the parties of the first part could cause said premises to be surveyed into town lots and blocks, and properly dedicate the same and make conveyances of the same for the use and benefit of all parties interested in said premises according to their respective rights therein,'' and describe the 39.89 acre tract as extending to low-water line. Walker and wife accepted the trust and platted the tract, conveying the lots in accordance therewith.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. G. T. Treadgold.*

For respondent there was a brief over the names of *Mr. F. J. Feeney, Mr. A. J. Sherwood* and *Mr. L. A. Liljeqvist,* with oral arguments by *Mr. Feeney* and *Mr. Sherwood.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears from the record that the plat of Woodland addition was filed December 15, 1890. There are seventeen lots in the four blocks bordering on the Coquille River. These lots do not extend to any highway on the north except the river, and nine of them have no means of ingress or egress except by way of the river. Little Street, Salmon Street, Lower Main Street, and Lumber Street, running north and south adjacent to these blocks, are not indicated as terminating with the north line of said blocks by any line across the north end thereof; but the appearance of the plat leaves such streets open at the north end as though extending to the river. Coquille River is navigable at this point, and the land in dispute is tide-land title to which was obtained from the state. The east line of Woodland addition extends about 500 feet farther north than the west line, making the distance from the navigable channel at these points about the same, as the river flows southwesterly. The north lots extend north and south as though facing on the river, while the other lots in these blocks extend east and west facing on the streets. The north part of lot 2 is covered by about 2 feet of water at low tide, by 6 or 7 feet of water at high tide, and the land is uncovered for 50 or 60 feet north of the lot at the extreme low tide. There is a difference of 2 feet between the water gauge, established by the United States engineer at work on the river, and the local gauge, causing some confusion

in the evidence as to the mean low-tide line. It is approximately 150 feet from lot 2 to the wharf line as established by the city of Bandon. There is a reef of low rocks next to the navigable channel. At zero or low tide about 15 feet square of this rock is about a foot above water. It appears that during the lifetime of Robert Walker the strip of land in front of the blocks in Woodland addition was never assessed nor taxed to him. Robert Walker died March 31, 1909. His heirs executed a quitclaim deed of the strip of un-platted land north of these blocks, 40 feet wide at the easterly end, and 105 feet in width at the westerly end, to the defendant Walker Warehouse Company. This strip is called a "mud flat." This defendant company obtained a permit from the Secretary of War of the United States on November 16, 1911, to construct a wharf in front of blocks 1, 2, and 3. Plaintiff resists an attempt by said defendant so to do.

It also appears that during the lifetime of Robert Walker there was a building used as a creamery erected in front of lot 3, block 3, and a woolen-mill in front of lot 1, block 4, and a large warehouse in front of lot 2, block 4–A; that wharves have been extended to the channel; that none of the original owners made any objections to the erection of these structures, or to the use of such property, although Walker lived near the same for 19 years after the plat was filed.

The question is to be determined by ascertaining what was the intention of the dedicators of Woodland addition. Did they intend to leave a space between the north end of the addition and the Coquille River, or did they intend that the lots in the north row of blocks of the addition should be waterfront lots and entitled to the usual waterfront privileges? We have stated the allegations of the pleadings somewhat at length, not so much to show the issues in the case as to indicate the claims of the respective parties or their conclusions

and deductions from the facts of the case, which are disputed only as to the minor details, having a slight bearing upon the main points. For these reasons we have not referred to all the testimony, but to a sufficient amount to indicate the trend thereof.

The main contention of the defendants is that the riparian rights were severed from the lot by the plat and dedication; that the ownership of plaintiff, shown to be dependent upon the common grantor, Robert Walker, is by the terms of the plaintiff's deed clearly limited to the platted lot described in his chain of title; that he bought in reliance upon the plat, which gives him a certain tract of land and clearly expresses an intention to divest the riparian rights from the platted lot; that, under the authorities, such riparian rights are attached to the tract indicated on the plat as lying between the platted lines of the lot and the river. Plaintiff claims the right of ingress and egress from the lot to the river, and the right to wharf out to the navigable water of the Coquille River as appurtenant to his lot.

1. As a general proposition, it may be stated that the upland and the land under the water forming, as they do, different parts of one entire estate, there is nothing to prevent the separation of the estate at the water line so as to permit the bed of the water to be owned by one person and the upland by another.

2. Such a separation results in conferring the ownership of the water, so far as it can rest in an individual, upon the one who owns the bed of the stream, and such ownership carries certain of the rights which are known as riparian rights. It gives the right to make use of the bed of a stream and of the power furnished by the bed of the water. This rule applies to land bordering on tide water and that bordering on fresh streams and rivers.

3. In order to accomplish a separation, the intention to effect it must be made distinctly to appear. If the grant is in the ordinary form bounded only by the water, the land below, as well as that above the water, will pass.

4. But the land under the water may be reserved by the reservation of·a strip along the shore, so as to prevent the grant from carrying title to the water's edge and making the grantee a riparian owner: 3 Farnham, Waters and Water Rights, § 724. Where land situated on a navigable lake or river is platted into lots, blocks and streets, and one acquires title to lots situated so as to be separated from such lake or river by a street, it has been held that the owner of such lots so situated did not acquire any riparian rights; that the street was a barrier separating such lots from the river: *Potomac S. Co.* v. *Upper Potomac S. Co.*, 109 U. S. 672 (27 L. Ed. 1070, 3 Sup. Ct. Rep. 445, 4 Sup. Ct. Rep. 15); *Oliver* v. *Klamath Lake Nav. Co.*, 54 Or. 95 (102 Pac. 786). The facts in the case at bar differ from those in the above-mentioned cases, in that the controlling feature, namely, the intervening street, is wanting in the case under consideration.

5. A riparian right is defined to be "a form of enjoyment of the land and of the river in connection with the land": Lord Cairns in *Lyon* v. *Fishmonger's Co.*, 1 App. Cas. 662, 672, quoted in *Potomac S. Co.* v. *Upper Potomac S. Co.*, 109 U. S. 683 (27 L. Ed. 1070, 3 Sup. Ct. Rep. 445, 4 Sup. Ct. Rep. 15). In many states lands totally or partially submerged are made the subject of grant by the sovereign in order that they may be reclaimed for useful purposes: *Fowler* v. *Wood*, 73 Kan. 511, 549 (85 Pac. 763, 117 Am. St. Rep. 534, 6 L. R. A. (N. S.) 162); *Taylor Sands Fishing Co.* v. *State Land Board*, 56 Or. 157, 161 (108 Pac. 126).

6. In *Grant* v. *Oregon Nav. Co.*, 49 Or. 324, at page 328 (90 Pac. 178, at page 179), Mr. Justice EAKIN

said: "By the legislative acts of 1872 (Laws 1872, pp. 129, 130), and 1874 (Laws 1874, pp. 76, 77), the upland owner was given the preference right to purchase the tide land, and upon such purchase, if not already vested in another under Section 4042, B. & C. Comp., he thereby acquired also the exclusive wharfage right to deep water, and also all accretions to his tide land and the right to fill up the shallows or flats, so long as he does not impede navigation nor interfere with commerce over the same—citing *Miller* v. *Mendenhall*, 43 Minn. 95 (44 N. W. 1141, 19 Am. St. Rep. 219, 8 L. R. A. 89)." Section 5201, L. O. L., provides that "the owner of any land in this state lying upon any navigable stream or other like water, and within the corporate limits of any incorporated town therein, is hereby authorized to construct a wharf or wharves upon the same, and extend such wharf or wharves into such stream or other like water beyond low-water mark so far as may be necessary and convenient for the use and accommodation of any ships or other boats or vessels that may or can navigate such stream or other like water." Where a party conveys a parcel of land bounded by water, although it lies in shallow water and is intended to be reclaimed by filling, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed. The intention to do so must clearly appear from the conveyance, and the mere fact that the boundary of the lot conveyed is indicated by a line on the plat will not limit the grant to the lines on the plat or operate to reserve to the grantor proprietary rights in front of the lots: *Gilbert* v. *Emerson*, 55 Minn. 254 (56 N. W. 818, 43 Am. St. Rep. 502).

7. In the latter case, R., being the owner of the land fronting on the waters of the bay of Duluth known as "Rice's Point," platted it into blocks and streets, extending the plat a distance of several blocks beyond

the actual shore line out into the shallow water, but not out to the line of navigability. He then conveyed, according to the plat, the original shore block to A., and all the water blocks in front of it to B. It was held: (1) That A.'s rights were limited to the lines of the original shore block as indicated on the plat, and that he acquired no appurtenant riparian rights in the unplatted space between the outermost platted blocks and the line of navigability; (2) that the plat, on its face, showed an intention that the outermost platted blocks should be deemed the shore blocks, with all the riparian rights in the water, and land under the water, in front of them, usually incident to a riparian estate, and that, after conveying these blocks, R. had no proprietary interest in the unplatted space in front of them. The same rule as to the outermost platted blocks was applied in the case of *Northern Pac. R. R. Co.* v. *Scott etc. Lbr. Co.,* 73 Minn. 25 (75 N. W. 737). This rule, if adopted in the case at bar, as we think it should be, is decisive in favor of plaintiff's claim.

By the platting and dedication of Woodland addition to Bandon by the former owners, thereby laying out the property in blocks and lots constituting definite metes and bounds as shown on the map, and by conveyances of lots with reference to the map, the riparian or wharf rights were severed and disassociated from all the inside lots and attached to the outermost ones, of which plaintiff's lot 2, block 3, is a part: *Grant* v. *Oregon Nav. Co.,* 49 Or. 324 (90 Pac. 178, 1099); *Pacific Elevator Co.* v. *City of Portland,* 65 Or. 349 (133 Pac. 72, 46 L. R. A. (N. S.) 363). The plat of Woodland addition contained in the record, taken in connection with the circumstances surrounding and following the dedication thereof, fairly implies that it was the intention of the dedicators that the outermost platted lots should be deemed the shore lots, with all the riparian rights in the water and the land under the

water in front of them, usually incident to a riparian estate, and that the owner of such a lot should permanently enjoy direct access to the water. All parties buying or selling lots by reference to the plat should be presumed to have acted with that understanding. After conveying these lots, neither Walker nor his representatives or their grantee had any proprietary interest in the unplatted space between the front lots and navigable water: *Gilbert* v. *Emerson,* 55 Minn. 254 (56 N. W. 818, 43 Am. St. Rep. 502) ; *Watson* v. *Peters,* 26 Mich. 508; *Richardson* v. *Prentiss,* 48 Mich. 88 (11 N. W. 819).

8. From the trust agreement referred to, as well as from the plat and the conduct of the parties in regard thereto, it would seem that it was the intention of the dedicators of this addition to plat and sell all the available land to low-water mark. It is very significant that the map shows that the northerly lines of the lots are parallel with the south lines, but run at an angle corresponding approximately with the direction of the river. If it had been the intention of the dedicators to reserve a strip of land north of the addition adjacent to the river, it would seem that they would have platted the blocks in a regular or rectangular form so that there would have been but one irregular shaped tract next to the river. They platted submerged land. By thus indicating the line of the addition along the river they practically established the same as the low-water line. There is at times considerable water upon this tract, and it was very appropriate, in dividing the same into city lots and blocks, for a line to be definitely fixed as the mean or ordinary low-tide line and marked on the map. This, we think, the plat shows was done. Woodland addition was surveyed and the plat prepared by a civil engineer. It certainly should have been the intention of the parties platting the addition to make the lines

definite. It also appears from the map that the lot in question and the other lots similarly situated are waterfront lots. Persons purchasing these lots on a navigable river with reference to the plat would be presumed to purchase the same as such waterfront lots with the rights and privileges usually appurtenant to such lots.

9. The title to tide lands which became vested in the State of Oregon by virtue of its sovereignty, upon its admission to the Union, is subject to the paramount right of navigation existing in the public, and the right of Congress to regulate commerce between the states: *Pacific Elevator Co.* v. *City of Portland,* 65 Or. 349 (133 Pac. 72, 46 L. R. A. (N. S.) 363), and cases there cited.

10. There is involved in this case more than the mere possession of the land. The right of access to and to wharf out to the harbor line is here in question. Plaintiff's remedy at law by an action of ejectment, if such there be, would not be adequate. The cases in this state heretofore cited are authority for the exercise of equitable jurisdiction in the case at bar. The contention earnestly made by counsel for defendants that a court of equity has no jurisdiction of this cause must therefore be denied. We are of opinion that the findings of the lower court are correct. The form of the decree there entered differs somewhat from the findings.

The decree, except in this respect, is affirmed; plaintiff to recover costs.                    AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.